A98A0851. RAYBURN v. THE STATE.
(506 SE2d 876)

BEASLEY, Judge.
A jury convicted Sherilyn Rayburn of driving a motor vehicle while under the influence of alcohol (OCGA § 40-6-391 (a) (1)) and of making an improper left turn (OCGA § 40-6-120). She alleges three errors: (i) the court charged the jury that her refusal to submit to a chemical test was admissible against her; (ii) the court admitted oral testimony of horizontal gaze nystagmus ("HGN") test results even

---

though the State failed to comply with Rayburn's discovery request; and (iii) the court allowed a voir dire question concerning whether potential jurors felt a blood alcohol test was required for a conviction and struck a juror who answered affirmatively.

1. The court charged the jury directly from OCGA § 40-6-392 (d): "In any criminal trial the refusal of the defendant to permit a chemical analysis to be made of her blood, breath, urine or other bodily substances at the time of her arrest shall be admissible into evidence against her." Evidence showed Rayburn had refused an intoxilyzer breath test requested by police.

She contends this instruction mandated the jury to infer guilt from this refusal. Mandatory inferences or presumptions in criminal cases invade the province of the jury and unconstitutionally shift the burden of proof to defendant.[1] The instruction contains no language regarding any inferences or presumptions, let alone mandatory ones. It merely informs the jury that it may consider the fact. As before, we uphold the giving of this instruction.[2]

The refusal to submit to a chemical test "may be considered as positive evidence creating an inference that the test would show the presence of the prohibited substance."[3] We note that although "[a] conviction for driving . . . under the influence of intoxicants may be based on circumstantial evidence,"[4] it has recently been held in *Brinson v. State*[5] that refusal to permit a chemical analysis will not alone sustain a conviction. Rayburn does not raise any issue in this regard.

2. Rayburn made a timely written demand for scientific reports under OCGA § 17-16-23, and the court directed the State to produce all such reports. The State redacted the preprinted section of the police report in which the arresting officer handwrote the results of the HGN test (a field sobriety test) on Rayburn. That section called for seven pieces of information: (a) whether the suspect wore hard contacts, which was marked "no"; (b) whether the test was positive, negative, or refused, which was not marked; (c) whether there was lack of smooth pursuit by the suspect's eyes, which was marked "both"; (d) whether there was distinct nystagmus at maximum deviation, which was marked "both"; (e) whether there was nystagmus onset before 45 degrees, which was marked "both"; (f) whether the suspect would not hold her head still, which was unmarked; and (g) a comment space, which was left blank.

[1] See *Francis v. Franklin*, 471 U. S. 307, 317 (105 SC 1965, 85 LE2d 344) (1985); *Stepic v. State*, 226 Ga. App. 734, 735 (1) (487 SE2d 643) (1997).
[2] *Wyatt v. State*, 179 Ga. App. 327, 329 (4) (346 SE2d 387) (1986); *Mathews v. State*, 176 Ga. App. 394 (3) (336 SE2d 259) (1985).
[3] *Brooks v. State*, 187 Ga. App. 194, 195 (1) (369 SE2d 801) (1988).
[4] *Posey v. State*, 215 Ga. App. 565, 566 (451 SE2d 463) (1994).
[5] 232 Ga. App. 706 (503 SE2d 599) (1998) (physical precedent).

The court characterized the redacted section as a scientific report which should have been produced and ruled the written report inadmissible under OCGA § 17-16-23 (c). Nevertheless it allowed the officers to orally testify to their observations and interpretations of Rayburn's performance of the test. The court reasoned that Rayburn was fully and properly notified of this oral testimony because the officers had testified similarly in a pretrial hearing in Rayburn's presence some months earlier and she had received a written transcript of that hearing.

"In all criminal trials the defendant shall be entitled to have a complete copy of any written scientific reports in the possession of the prosecution which will be introduced in whole or in part against the defendant . . ." upon defendant's reasonable written demand.[6] Failure to furnish the report to the defendant at least ten days prior to trial "shall result in such report being excluded and suppressed from evidence in the prosecution's case-in-chief or in rebuttal."[7] This excludes not only the written report itself, but also any oral testimony as to the results of the scientific examinations or experiments referenced in the report.[8]

The HGN test is a scientific test.[9] The question then is whether the handwritten notes of the officer in the police report constituted a written scientific report under OCGA § 17-16-23 (a).

The common element of scientific reports is the inclusion of "the examiner's findings based on scientific analysis or his or her opinion."[10] Checklists, expert's notes, work product, recordation of data, internal documents, and graphs do not fall in this definition.[11] Nor do individual test results that do not include any expression of the expert's conclusions or opinion.[12]

The court correctly found that the HGN test results constituted a scientific report discoverable under OCGA § 17-16-23. The findings as to the lack of smooth pursuit, the distinct nystagmus at maximum deviation, and the nystagmus onset before 45 degrees were not merely data recordation or notes; they were findings based on a scientific analysis of Rayburn's performance of a recognized test. Oral communication of the results to Rayburn and even the "open file" policy of the prosecutor did not relieve the State of its burden to furnish

---

[6] OCGA § 17-16-23 (b).

[7] OCGA § 17-16-23 (c).

[8] *State v. Madigan*, 249 Ga. 571, 572-573 (1) (292 SE2d 406) (1982).

[9] *Manley v. State*, 206 Ga. App. 281 (424 SE2d 818) (1992).

[10] *Madigan*, supra, 249 Ga. at 574, fn. 2; see *Durden v. State*, 187 Ga. App. 154, 157 (1) (369 SE2d 764), aff'd 258 Ga. 720 (375 SE2d 610) (1988).

[11] *Roberts v. State*, 196 Ga. App. 450 (396 SE2d 81) (1990); *Durden*, supra, 187 Ga. App. at 156-157.

[12] *Roberts*, supra, 196 Ga. App. at 451.

the written report to Rayburn.[13] The law required exclusion of not only the written report but also the selfsame oral testimony.[14]

Nevertheless, "[t]he burden is upon the defendant[ ] not merely to show error, but to show *harmful* error. . . ."[15] Rayburn is unable to vault this barrier.

The officers' testimony of the HGN results was "merely cumulative" of the unimpeached testimony of her intoxication and thus its admission was harmless.[16] The officers testified that (a) Rayburn turned left into a lane for oncoming traffic and drove there for several car lengths, (b) once in a proper lane she slowly drifted toward a neighboring lane and straddled the lanes for some distance, (c) when she exited her vehicle she swayed and was sluggish in her motor skills, (d) she smelled strongly of alcohol and admitted having recently consumed some, (e) she sought to hide her intoxication by placing a nickel in her mouth in the belief it would absorb the smell of alcohol, (f) she spoke with slurred speech and had bloodshot eyes, (g) the alcosensor detected alcohol in her system, (h) she refused to do the heel-to-toe test, started then stopped the one-leg-stand test, and refused to submit to the intoxilyzer breath test to show the blood alcohol level,[17] and (i) an experienced officer gave his opinion, based on observation, that she was intoxicated to the extent it was less safe for her to drive.

"[I]t is evident that the HGN evaluation was only one of a series of observations which caused the officer to form the belief that the appellant was under the influence of alcohol. In the context of the overwhelming evidence of guilt in this case, the admission of the testimony in question must be considered harmless."[18] Compare *Wester v. State*[19] and *Alexander v. State*,[20] where the error was deemed harmful because the erroneously-admitted scientific evidence was the only evidence supporting an essential element of the crime.

3. The State asked jurors during voir dire: "Is there anyone here

---

[13] *Walls v. State*, 169 Ga. App. 80, 82 (1) (311 SE2d 243) (1983); *Luck v. State*, 163 Ga. App. 657, 658-659 (2) (295 SE2d 584) (1982).

[14] See *Madigan*, supra, 249 Ga. at 572-573.

[15] (Citation omitted; emphasis in original.) *Moon v. State*, 194 Ga. App. 777, 779 (3) (392 SE2d 19) (1990).

[16] *Odom v. State*, 248 Ga. 434, 437 (3) (283 SE2d 885) (1981).

[17] See OCGA § 40-6-392 (d) (refusal to permit chemical analysis is admissible against defendant); *Brooks v. State*, 187 Ga. App. 194, 195 (1) (369 SE2d 801) (1988) ("refusal itself may be considered as positive evidence creating an inference that the test would show the presence of the prohibited substance") (citations omitted).

[18] *Ross v. State*, 192 Ga. App. 850 (1) (386 SE2d 721) (1989). See generally *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976) (no harmful error where it is " 'highly probable that the error did not contribute to the judgment' ") (citation omitted).

[19] 260 Ga. 228, 229 (391 SE2d 765) (1990).

[20] 203 Ga. App. 375, 376 (416 SE2d 762) (1992).

who believes that we must present a blood alcohol test result in order for you to find the defendant guilty? Is there anyone here who cannot find the defendant guilty without a blood test or a breath test showing her blood alcohol level?" Rayburn objected on the ground the query asked the jurors to prejudge the case. The court sustained the objection as to form and allowed the State to rephrase the question to: "Do any of you believe that the State must present the results of a blood alcohol test before the defendant can be convicted?" A juror responded affirmatively and, after stating she was unsure whether she could set those feelings aside upon the court's charge, was dismissed for cause.

Rayburn contends the question improperly sought prejudgment of the case.[21] OCGA § 15-12-133 allows voir dire questions as to "any fact or circumstance indicating any inclination, leaning, or bias which the juror might have respecting the subject matter of the action. . . ." Where the State had no blood alcohol test results to present because of Rayburn's refusal to take the test, the State could properly uncover whether a juror would close her mind to the evidence of the case upon learning blood alcohol test results were not available. Because such was not a prejudgment of the case, the court did not abuse its discretion in allowing the question.[22]

Nor did the court err in excusing the juror for cause. A potential juror having an opinion so fixed and definite that she is unable to set the opinion aside and decide the case based upon the court's charge on the evidence, is excusable for cause.[23]

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 11, 1998 —
RECONSIDERATION DENIED SEPTEMBER 22, 1998 — 

*Jamie S. Wingler*, for appellant.
*Barry E. Morgan, Solicitor, Lawton W. Scott, Assistant Solicitor*, for appellee.

---

[21] See *Shields v. State*, 202 Ga. App. 659 (1) (415 SE2d 478) (1992).
[22] Id. at 659-660 ("the 'control of the voir dire examination is vested in the sound legal discretion of the trial judge and will not be interfered with by this court unless the record clearly shows an abuse of that discretion'") (citations omitted).
[23] *Johnson v. State*, 262 Ga. 652, 653 (2) (424 SE2d 271) (1993).