## A02A2279. JELLIE v. THE STATE.
(573 SE2d 490)

ELDRIDGE, Judge.

Following a bench trial in the City Court of Atlanta, Jason P. Jellie was found guilty of DUI — less safe driver, failure to yield, and possession of an open container. He appeals, contending that the trial court erred in failing to suppress the results of his field sobriety tests due to a *Miranda*[1] violation; that the implied consent warnings were administered improperly rendering his refusal to submit to testing subject to suppression; and that the evidence was insufficient to support Jellie's conviction. Finding these contentions to be meritless, we affirm.

1. Jellie first challenges the admission of testimony regarding the results of several field sobriety tests because he was not first given *Miranda* warnings. However, under Georgia law, *Miranda* warnings must precede a request to perform a field sobriety test only

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

when the suspect is "in custody."[2] In deciding whether the suspect was in custody, "the proper inquiry is whether the individual was formally arrested or restrained to the degree associated with a formal arrest, not whether the police had probable cause to arrest."[3]

Here, the officers gave no indication to Jellie that he was under arrest prior to administering the field sobriety tests. The officers never indicated to him that their involvement was anything more than a brief investigatory stop. The officers smelled alcohol on Jellie's breath and observed other signs that he had been drinking before administering the tests, but had not yet arrested him. Further, Jellie never testified that he thought he was restrained to a degree associated with a formal arrest prior to taking the field sobriety tests. Since Jellie was not in custody before the officers conducted the field sobriety tests, the officers were not required to give him *Miranda* warnings prior to conducting the tests.

> [S]ince there was no arrest during the temporary investigatory stop to conduct the field sobriety tests, then the defendant was not deemed in custody, seized, or under arrest for *Miranda* purposes even if the officer had possession of [his] driver's license and insurance card and temporarily detained [him].[4]

In support of a contrary view, Jellie argues that the State failed to prove the specific amount of time which elapsed while Jellie and the initial detaining officer awaited the arrival of a DUI task force officer to conduct a DUI investigation, and thus "custody" should be inferred from such unproven time span. However, the DUI task force officer testified that he responded to the call in "a few minutes, not a very long delay." Further, Jellie did not testify at trial or on the motion to suppress, and there is no evidence that the delay about which he now complains was in any way unreasonable. Moreover, Jellie was not placed in the back of the police car, nor was he handcuffed during the apparently short wait for the DUI officer. "And although [the original detaining officer] told [Jellie] that he was not free to leave while they waited for the DUI task force to arrive, not every detention is an arrest. See *State v. Dible*, 232 Ga. App. 73, 74 (502 SE2d 245) (1998)."[5] Under these circumstances, a reasonable person could conclude that his freedom of action was only tempora-

---

[2] *State v. Pastorini*, 222 Ga. App. 316, 317-318 (474 SE2d 122) (1996); *State v. Whitfield*, 214 Ga. App. 574 (448 SE2d 492) (1994).

[3] (Citations omitted.) *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995).

[4] (Citations and punctuation omitted.) *State v. Picot*, 255 Ga. App. 513, 516 (2) (565 SE2d 865) (2002).

[5] *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000).

rily curtailed and that a final determination of his status was simply delayed. Accordingly, the trial court's finding that Jellie was not in custody at the time he performed the field sobriety tests is not clearly erroneous.

Jellie additionally argues that the original detaining officer wrote out a supplemental police report during the time Jellie performed the field sobriety tests and that such fact shows that the detaining officer presumed Jellie would be arrested. However, "it is the reasonable belief of an ordinary person under such circumstances, and not the subjective 'belief' or intent of the officer, that determines whether an arrest has been effected."[6] Thus, pretermitting whether the creation of a supplemental police report indicates the detaining officer presumed Jellie would ultimately be arrested for DUI, such fact does not show that Jellie believed he was under arrest for DUI during his performance of the field sobriety tests.

2. Next, Jellie contends that the DUI officer's failure to immediately obtain a "yes" or "no" answer from Jellie as to whether he would take the chemical test referenced in the implied consent warnings renders the warning improperly given. In that regard, he complains that the DUI officer's procedure of transporting a defendant to a Breathalyzer machine before asking whether the defendant will submit to a chemical test of his breath constitutes an improper "delay" in giving the implied consent warnings.

The implied consent warnings constitute a statement of fact and law that delineates the rights of both the State and the driver with regard to chemical tests to determine blood alcohol/drug levels for DUI purposes. The purpose of the implied consent warnings is to permit a DUI arrestee to make an informed choice regarding submitting or refusing to submit to a State-administered test. In this case, it is undisputed that Jellie was read the implied consent warnings on the scene without delay; that the implied consent warnings were properly read; and that Jellie understood his rights under the implied consent warnings. We find no evidence — and appellant points to none — that waiting until Jellie had an opportunity to take the breath test before asking him his decision with regard thereto in any way "depriv[ed] him of making an informed choice regarding submitting to or refusing the State-administered test."[7] In fact, the evidence in this case shows that Jellie's ultimate refusal to submit to a breath test was accompanied by his reiteration that he understood what such refusal entailed pursuant to the implied consent warnings. "[I]t

---

[6] (Punctuation and footnote omitted.) *Harmon v. State*, 253 Ga. App. 140, 141-142 (1) (558 SE2d 733) (2001).

[7] *Morrissette v. State*, 229 Ga. App. 420, 423 (2) (a) (494 SE2d 8) (1997).

is fundamental that harm as well as error must be shown for reversal."[8]

Moreover, Jellie was convicted of DUI — less safe driver. Proof of such offense is not dependent on chemical test results.[9] The record in this case shows that Jellie made a sudden left turn in front of a vehicle, which vehicle was forced to slam on its brakes to avoid an accident; the detaining officer was behind the braking vehicle and saw the traffic violation. The detaining officer testified that when he stopped Jellie and approached his car, Jellie smelled strongly of an alcoholic beverage and that his eyes were bloodshot and watery. The DUI task force officer called to the scene testified that Jellie's voice was slurred and "thick tongued"; that Jellie could not stand properly and swayed on his feet; and that Jellie failed each field sobriety test. The DUI officer testified that Jellie "had had way too much to drink to be out driving. And the driver wasn't borderline; he showed extreme impairment." A videotape of the stop and the field sobriety tests apparently confirmed Jellie's intoxicated condition. Later, during an impound search of Jellie's car, a nearly empty can of beer was found in the center console. In light of this overwhelming evidence of guilt, any error in allowing testimony that Jellie refused chemical testing would be harmless.[10]

> When the testimony at issue is reviewed in light of the strength of the evidence outlined above, we find that there is no reasonable possibility [of] a different verdict had the trial court not allowed the testimony. . . . Thus, based upon our weighing of the error "in the context of the entire case," *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976), we conclude that because the challenged testimony did not contribute to the judgment, no reversible error exists.[11]

3. The evidence as adduced above was sufficient under the standard of *Jackson v. Virginia*[12] to support the offenses for which Jellie was convicted.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

---

[8] *Matthews v. State*, 268 Ga. 798, 803 (4) (493 SE2d 136) (1997).

[9] See *Kevinezz v. State*, 265 Ga. 78, 79 (2) (454 SE2d 441) (1995); *Harmon v. State*, supra at 142 (2).

[10] See generally *Laney v. State*, 271 Ga. 194, 197 (8) (515 SE2d 610) (1999); *Felder v. State*, 266 Ga. 574, 576 (468 SE2d 769) (1996).

[11] (Citation and punctuation omitted.) *London v. State*, 274 Ga. 91, 94-95 (4) (c) (549 SE2d 394) (2001).

[12] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

Decided November 1, 2002.

*Head, Thomas, Webb & Willis, William C. Head,* for appellant.
*Joseph J. Drolet, Solicitor-General, Wayne J. Dawson, Katherine Diamandis, Assistant Solicitors-General,* for appellee.