## A05A0528. CALDWELL v. THE STATE.
### (614 SE2d 246)

ELLINGTON, Judge.

A DeKalb County jury convicted Cedric Caldwell of two counts of aggravated assault, OCGA § 16-5-21 (a) (2), and one count of aggravated battery, OCGA § 16-5-24.[1] He appeals from the denial of his motion for new trial. Finding no error, we affirm.

1. Caldwell, who represented himself at trial, contends on appeal that the trial court erred when it found he had voluntarily and knowingly waived his right to counsel. "[W]hile a criminal defendant has an absolute right to counsel in any prosecution which could result in imprisonment, the accused also has a fundamental right to represent himself in a state criminal trial when he voluntarily and intelligently elects to do so." (Citation and punctuation omitted.) *Clarke v. Zant,* 247 Ga. 194, 195 (275 SE2d 49) (1981). In order to establish a valid waiver of the right to counsel,

> a trial judge must investigate as long and as thoroughly as the circumstances of the case before him demand. To be valid, such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter. When determining whether

---

[1] The court merged the aggravated battery count into one of the aggravated assault counts for sentencing.

> there has been an informed and intelligent waiver of such a right, each case must be determined upon its own peculiar facts and circumstances. . . . [W]hen a defendant challenges an alleged waiver [of the right to counsel] on appeal, it is the State's burden to prove that the defendant received sufficient information and guidance from the trial court upon which to knowingly and intelligently relinquish this right.

(Punctuation and emphasis omitted.) *Hamilton v. State*, 233 Ga. App. 463, 466-467 (1) (b) (504 SE2d 236) (1998).

The record in this case shows that Caldwell was tried in June 2002 on three counts of aggravated assault and one count of aggravated battery arising from the shooting of two men during a drug deal. Caldwell testified at trial and claimed that an acquaintance was present at the scene and was the man who shot the victims. The jury acquitted Caldwell of one count of aggravated assault, but deadlocked on the three remaining charges, leading to a mistrial on those charges. In October 2003, the State retried Caldwell on the remaining charges. Before the second trial, the court appointed a different defense attorney to represent Caldwell. Immediately after the case was called for the second trial, defense counsel told the court that Caldwell wanted to proceed with his trial pro se. Counsel stated that he had explained to Caldwell the risks of self-representation, but that Caldwell was "adamant" about proceeding pro se. When the court asked Caldwell if he wanted to represent himself, Caldwell responded, "Yes, sir." The trial court then explained the difficulties and potential consequences of going to trial without counsel and strongly advised Caldwell against doing so. Despite the court's warnings, Caldwell repeatedly and emphatically told the court that he wanted to represent himself. He stated that he wanted the court to dismiss his current appointed counsel, but did not give a reason. Caldwell never asked for another appointed counsel or for a continuance to allow him to hire an attorney. The court informed Caldwell of the crimes for which he was being tried, the potential sentences he could receive if convicted, the effect of his status as a recidivist on his eligibility for parole, possible defenses, and the fact that there would probably be no lesser-included offenses to the crimes as charged. After hearing this information, Caldwell reaffirmed that he wanted to proceed pro se. The court warned Caldwell that it would apply the same rules to the trial regardless whether Caldwell represented himself or was represented by an attorney. The court also offered to have Caldwell's counsel available to provide assistance during the trial, but Caldwell refused the offer. Even so, the court asked counsel to remain in the courtroom for part of the trial as an observer in case Caldwell changed his mind about representing himself. Caldwell

then argued several motions to the court, including motions to exclude similar transaction evidence, exclude improper character evidence, and suppress his custodial statements. The court advised Caldwell that he would rule on the admissibility of the challenged evidence as the trial progressed.

At that point, Caldwell suddenly became exasperated and told the court that he would not participate in jury selection. Outside the presence of the jury, Caldwell accused the court and prosecution of being biased against him, claimed that the trial was a waste of time, and repeatedly told the court that he wanted to stay in his holding cell during the trial. Then, for the first time, Caldwell complained that he did not understand what was going on due to anti-depression medication he was taking. He claimed that he was not fully conscious and did not want to be "bothered" by the trial. He repeatedly insisted that the court send him back to his holding cell.

Based upon Caldwell's new claims, the court decided to have a competency hearing and temporarily reappointed trial counsel to represent Caldwell during the hearing. Two clinical psychologists who had previously examined Caldwell interviewed him during a recess in the proceedings in order to determine whether Caldwell was competent to stand trial. Both psychologists told the court that they believed the medication Caldwell was taking, Zoloft, did not affect Caldwell's ability to understand what was going on during the trial. They both stated that Caldwell was uncooperative and apathetic, but that he was not psychotic or delusional. They described Caldwell as intelligent and capable of organized, logical thinking. They also opined that Caldwell was competent to stand trial. Further, one psychologist testified that, based upon his recent experience with Caldwell, Caldwell's decision to fire trial counsel and to claim that he wanted to represent himself, followed by his refusal to participate in the trial, appeared to be an effort to manipulate the court. Having heard the evidence and, based upon its observation of Caldwell during the earlier proceedings, the court found that Caldwell was competent to stand trial.[2]

Caldwell then reaffirmed to the court that he did not want to be represented by counsel and that he would not participate in the trial. When it was time to choose a jury, Caldwell took off his clothes and refused to leave his holding cell. The court strongly advised Caldwell to participate in voir dire, but accepted his decision to remain in his cell. A jury was selected in Caldwell's absence. The next morning, Caldwell changed his mind and decided to participate in the trial. After twice confirming to the court that he still wanted to represent

---

[2] Caldwell did not challenge the court's competency ruling on appeal.

himself, he presented an opening statement, cross-examined the State's witnesses, testified and presented witnesses on his behalf, and gave closing arguments.

On appeal, Caldwell argues that the trial court should have appointed "standby counsel" to assist him during trial. The record shows, however, that the court made such an offer and Caldwell rejected it. Although Caldwell claims the court should have inquired further into the problems he was having with his appointed counsel, the record shows that Caldwell notified the court immediately after the case was called for trial that he wanted to fire counsel and that he never wavered from that position, instead repeatedly insisting that he wanted to represent himself. Caldwell has failed to show that the court's further inquiry would have made any difference in his decision to proceed pro se. In a similar vein, there is no merit to Caldwell's claim that he had been "forced" to represent himself, implying that the court should have appointed new counsel or granted a continuance so he could hire new counsel, since Caldwell never asked for a continuance or indicated that he wanted an attorney during the trial. Finally, Caldwell's laundry list of mistakes he made due to his choice to represent himself at trial is irrelevant to the issue of voluntariness. The question here is not whether the defendant is *capable* of acting as a good lawyer, but whether he *knowingly and intelligently waived* his right to counsel. *Lamar v. State*, 278 Ga. 150, 153 (1) (b) (598 SE2d 488) (2004).

We find that the record in this case supports the trial court's conclusion that Caldwell was competent to stand trial and to make decisions about how to proceed with his trial, and that he voluntarily and knowingly waived his right to counsel. *Lamar v. State*, 278 Ga. at 151 (1) (a) (after conducting an inquiry into defendant's competency to stand trial, court found defendant was competent and, therefore, was able to choose to represent himself; the record also showed he had voluntarily waived his right to counsel); *Holt v. State*, 244 Ga. App. 341, 344 (1) (535 SE2d 514) (2000) (defendant voluntarily waived right to counsel after court advised him of risks of self-representation and urged him to take advantage of the service of the public defender).

2. Caldwell contends the trial court impermissibly commented on the evidence. "It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57. Specifically, Caldwell challenges the court's statements to the jury about Caldwell's decisions and behavior during trial.

The record shows that the court explained to the jury that Caldwell chose not to be present during jury selection, the trial would

proceed in his absence, and Caldwell would have an opportunity to participate if he changed his mind. The court also told the jury that Caldwell had been offered an attorney and it had advised Caldwell to accept the offer, but he had chosen to represent himself. When it was time for Caldwell to testify, the court acknowledged to the jury that the process of having Caldwell tell his version of events without questioning from a defense attorney was unusual and presented certain difficulties. Nonetheless, the court told the jury that it did not know of another way for Caldwell to testify other than in narrative form. Caldwell did not object to any of the court's statements.

Pretermitting whether Caldwell waived objections to the statements that were made in his presence,[3] we find that none of the challenged statements was an improper comment on the evidence under OCGA § 17-8-57. None of the statements expressed an opinion about whether the evidence had proven a material issue in the case, whether a witness was credible, or whether the defendant was guilty. *Flantroy v. State*, 231 Ga. App. 744, 746 (3) (501 SE2d 10) (1998) (court's comments admonishing defendant did not involve his guilt or innocence or comment on the evidence and, therefore, did not violate OCGA § 17-8-57); cf. *Jones v. State*, 189 Ga. App. 232, 233 (1) (375 SE2d 648) (1988) (reversing conviction after trial court implied that it considered the prosecution's expert witness to be credible and unbiased). Further, we find the court's statements were appropriate under the circumstances, were clearly intended to explain the unusual situation to the jury and ensure that Caldwell received a fair trial, and were necessitated by Caldwell's behavior. See *Williams v. State*, 183 Ga. App. 373, 375 (2) (358 SE2d 914) (1987) (court's explanation to the jury that the defendant was not in the courtroom because he had become disruptive was not an impermissible comment under OCGA § 17-8-57). Accordingly, Caldwell's argument presents no basis for reversing his convictions.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MAY 2, 2005.

*Virginia W. Tinkler*, for appellant.
*Jeffrey H. Brickman, District Attorney, Elisabeth G. Macnamara, Assistant District Attorney*, for appellee.

---

[3] *Zehner v. State*, 241 Ga. App. 345 (1) (525 SE2d 416) (1999) ("the issue of whether OCGA § 17-8-57 was violated is not reached unless an objection or motion for mistrial is made on that ground") (citation omitted); *Williams v. State*, 183 Ga. App. 373, 375 (2) (358 SE2d 914) (1987) (accord).