## A10A0687. THE STATE v. TAN.
(699 SE2d 74)

ADAMS, Judge.
In this prosecution for driving under the influence, the trial court granted a certificate of immediate review to allow the State to appeal its order granting Fen Yue Tan's motion to suppress the breath test slip from the Intoxilyzer 5000 and all testimony regarding the intoxilyzer.[1] For the reasons set forth below, we reverse.

---

[41] *Johnson v. State*, 296 Ga. App. 112, 113 (1) (673 SE2d 596) (2009).
[1] We note, however, that the certificate of immediate review was unnecessary as the State could appeal the grant of the motion to suppress as of right under OCGA § 5-7-1 (a) (4).

In considering the trial court's grant of Tan's motion to suppress, we apply a de novo review to the trial court's application of the law to the facts

if the facts are stipulated, or if the critical facts do not depend on the testimony of witnesses who are subject to cross-examination. However, a trial court's ruling on a motion to suppress frequently involves a mixed question of fact and law. When the outcome of a motion to suppress depends on the credibility of the witnesses or on disputed facts, and the trial court has not committed an error of law, the court's ruling will not be disturbed on appeal.

(Citation omitted.) *Watson v. State*, 302 Ga. App. 619, 621 (1) (691 SE2d 378) (2010).

Here, the record reflects that Tan was arrested on August 24, 2008 for driving under the influence. Following her arrest, on January 26, 2009, Tan filed a motion to suppress and discovery requests, including a request for all "scientific reports" in accordance with OCGA § 17-16-23. At the hearing on the motion to suppress, Officer Michael E. Knorps of the Gwinnett County Police Department testified that he heard a crash as Tan's car rear-ended the car in front of it when both vehicles were merging to enter a police DUI checkpoint. When Tan exited her car, Knorps observed that she was swaying "a bit" and that her eyes were bloodshot. Knorps also could smell a strong odor of alcohol coming from her person and her car, so he summoned a DUI officer.

Officer Jason Ayers responded to the scene and testified that he, too, noticed a strong smell of alcohol coming from Tan's vehicle. Tan admitted to Ayers that she had consumed one beer, and Ayers observed that she slurred her speech and mumbled when she spoke. In addition, he noticed that she was very unsteady when she exited her vehicle and had trouble maintaining her balance. Ayers administered two field sobriety tests and, based upon Tan's performance, concluded that she was impaired. He then gave Tan an Alco-Sensor test, the results of which were positive for alcohol. Based upon all the factors at hand, Ayers concluded that Tan was under the influence of alcohol and was a less safe driver. He placed her under arrest.

Ayers then read Tan the implied consent notice, and after she agreed to perform a breath test, Ayers began administering the Intoxilyzer 5000 test at a nearby mobile testing unit. Ayers testified, however, that Tan became belligerent at that point, insisting that she had to go to the bathroom. When Ayers instructed Tan to blow into the intoxilyzer, she put her mouth on the mouthpiece, pulled it off with her mouth and spit it on the floor. Ayers stated that he replaced

the mouthpiece three times, and each time she pulled it off and spit it on the floor until eventually the instrument timed out.

During cross-examination, Ayers stated that the intoxilyzer printed out a report showing an insufficient sample when it timed out and that he had attached the printed slip to his report. Tan's attorney represented that he had not received a copy of the printout in the State's discovery, so Ayers showed him the slip. Tan's counsel then questioned Ayers, as follows:

Q: So an insufficient sample was given?
A: Yes.
Q: And it actually received about .118 liters of air; is that correct?
A: If that's what is listed on the slip, that's what happened. Yes sir.

At the end of the hearing, Tan's attorney asked for a copy of the intoxilyzer slip, and the State agreed to provide it. The trial court subsequently denied Tan's motion to suppress and ruled that Tan's refusal to submit to the test would be admissible at trial.

The matter was placed on the trial calendar for August 12, 2009, and at the call of the two-week calendar that morning, the trial court indicated that he had received notice that Tan was ready for trial. And Tan's attorney announced ready for trial at the calendar call on the morning of August 20, when the case was reached. Later, Tan's counsel raised a pretrial motion to suppress her refusal to take the breath test. Before stating the basis for his motion, Tan's attorney announced for the record that issue had been joined and then argued that because the State had failed to provide him with a copy of the breath test slip showing an insufficient sample, Tan's refusal should be suppressed. He argued that the slip should have been produced at least ten days prior to trial in response to his discovery request for scientific reports, citing *Rayburn v. State*, 234 Ga. App. 482, 483-484 (2) (506 SE2d 876) (1998). The trial court agreed, granting the motion to suppress from the bench but certifying the matter for immediate appellate review. The court subsequently memorialized this ruling in a written order, which cited *Rayburn* and held that "[t]he breath test slip indicating an insufficient sample (the scientific report) shall be excluded, and there shall be no testimony regarding the Intoxilyzer from any witnesses."

In *Rayburn*, the State produced in discovery a police report in which the preprinted section containing the officer's handwritten notations describing the results of an HGN field sobriety test had been redacted. The trial court characterized the redacted section as

YALE LAW LIBRARY

a scientific report that should have been produced in response to Rayburn's discovery requests. The court ruled the written report inadmissible, but allowed the officers to orally testify as to their observations and interpretations of Rayburn's performance of the test because Rayburn had received sufficient notice of this testimony when the officers appeared at the pretrial hearing. *Rayburn*, 234 Ga. App. at 483-484 (2). This Court upheld the trial court's conclusion that the HGN test was a scientific test and that the redacted section constituted a scientific report. The Court concluded that "[t]he law required exclusion of not only the written report but also the selfsame oral testimony." Id. at 485 (2). Nevertheless, because the HGN test was only one of several indicators of Rayburn's intoxication, the trial court ruled that any error was harmless and affirmed Rayburn's conviction. Id. at 485 (2).

The breath test slip in this case, however, does not constitute a written scientific report within the meaning of OCGA § 17-16-23. Under OCGA § 17-16-23 (a), a written scientific report subject to discovery "includes, but is not limited to, ... blood alcohol test *results* done by a law enforcement agency or a private physician; and similar types of reports that would be used as scientific evidence by the prosecution in its case-in-chief or in rebuttal against the defendant." (Emphasis supplied.) "An intoxilyzer measures a person's blood alcohol concentration from a breath sample given by blowing into the machine, which then produces a printout of the test results." (Citation omitted.) *Stetz v. State*, 301 Ga. App. 458, 461 (687 SE2d 839) (2009). Thus, an intoxilyzer printout showing the results of the instrument's analysis of the blood alcohol concentration in a defendant's breath would be subject to discovery under OCGA § 17-16-23. See *Bazemore v. State*, 244 Ga. App. 460, 462 (1) (535 SE2d 830) (2000) (holding results of gas chromatography test and documents pertaining to the "actual test of defendant's blood" discoverable). But in this case no test or analysis was performed because the sample was insufficient, and the breath test slip does not show any test results. It reflects only a measurement of breath volume. There was no analysis by the instrument of that breath volume. Accordingly, we conclude that a printout reflecting an "insufficient sample," and thus no analysis and no result, is not subject to discovery under OCGA § 17-16-23. See *Brown v. State*, 191 Ga. App. 357, 358 (1) (381 SE2d 543) (1989) (holding printout showing insufficient sample from breath test not subject to discovery under OCGA § 17-7-211, which was repealed and reenacted to apply only to misdemeanor cases. See OCGA § 17-16-23; Ga. L. 1994, p. 1895, § 4); *Looney v. State*, 180 Ga. App. 693, 694 (2) (350 SE2d 29) (1986) (same as to testimony regarding insufficient sample).

This conclusion is supported by the *Rayburn* opinion itself, which states that

> [t]he common element of scientific reports is the inclusion of the examiner's *findings based on scientific analysis* or his or her opinion. Checklists, expert's notes, work product, *recordation of data*, internal documents, and graphs do not fall in this definition. Nor do individual test results that do not include any expression of the expert's conclusions or opinion.

(Punctuation and footnotes omitted; emphasis supplied.) *Rayburn*, 234 Ga. App. at 484 (2). The breath test slip's measurement of breath volume was a mere recordation of data. No scientific analysis of that data occurred and no conclusion was drawn. Accordingly, the breath test slip in this case lacks the "common element" required for a scientific report described in *Rayburn*. Moreover, this conclusion is consistent with this Court's recent holding that "the only discoverable information from an intoxilyzer test under OCGA § 40-6-392 (a) (4) is the computer printout of the test result." (Footnote omitted.) *Stetz*, 301 Ga. App. at 461. It follows that here, where there is no test and no result, there is nothing to discover. Accordingly, we hold that the State was not required to produce the breath test slip to Tan ten days before trial as a part of discovery in this case, and the trial court erred as a matter of law in suppressing the breath test slip and all testimony about the intoxilyzer on that ground.[2]

*Judgment reversed. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 8, 2010.

*Rosanna M. Szabo, Solicitor-General, Lisa M. Moultrie, Assistant Solicitor-General*, for appellant.
*Norman H. Cuadra*, for appellee.

---

[2] Moreover, we note that "the purpose of [the discovery statutes] is to avoid surprise. [Cit.]" *Braswell v. State*, 281 Ga. App. 500, 502 (2) (636 SE2d 689) (2006). No surprise occurred in this case. Tan's attorney had already been shown the breath test slip and cross-examined Ayers about it at the motion hearing. The State agreed to provide Tan a copy. And although the better practice may have been to provide Tan a copy of the slip before the trial date, the record demonstrates that the State provided a copy at the August 20 hearing on the pretrial motion.