## A11A0327. HALE v. THE STATE.
### (714 SE2d 19)

DILLARD, Judge.

Walter Douglas Hale was convicted by a jury on one count of passing in a no-passing zone[1] and one count of driving under the influence less-safe.[2] Hale appeals his convictions, arguing that the trial court erred by (1) denying his motion to suppress the results of an alco-sensor test conducted prior to receiving his *Miranda* warnings and (2) informing the jury as to the existence of excluded evidence during preliminary instructions. For the reasons noted infra, we reject these arguments and affirm Hale's convictions.

Viewed in the light most favorable to the jury's verdict,[3] the record shows that Hale was traveling on his motorcycle around 1:00 a.m. when he decided to pass another vehicle by crossing over a double-yellow line. A City of McDonough police officer observed this illegal maneuver and subsequently stopped Hale in the parking lot of his ultimate destination, a restaurant/bar frequented by other bikers. The

---

[1] *See* OCGA § 40-6-46 (b).

[2] *See* OCGA § 40-6-391 (a) (1).

[3] *See, e.g., Goddard v. State*, 242 Ga. App. 154, 154 (529 SE2d 184) (2000) ("[T]he evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence[.]" (citation and punctuation omitted)).

officer immediately smelled the odor of an alcoholic beverage on Hale, and after being questioned, Hale admitted to having consumed one or two alcoholic beverages approximately two hours earlier.

The officer then asked Hale to perform three field sobriety tests (i.e., the horizontal-gaze nystagmus, the one-leg stand, and the walk-and-turn), and Hale exhibited clues of impairment during each of them. Thereafter, the officer inquired as to whether someone could retrieve Hale's motorcycle for him, and then answered in the affirmative after Hale asked if he would be going to jail that evening. Hale then demanded a breath or blood test, and the officer administered a portable alco-sensor breath test, which returned a positive result for the consumption of alcohol. Additionally, the officer concluded that Hale's manifestations were consistent with alcohol consumption and that he appeared to be a "less-safe driver."

Given the foregoing, Hale was placed under arrest for violating a no-passing zone and driving under the influence less-safe. And upon his arrival at the police station, Hale was administered an Intoxilyzer 5000 breath test pursuant to the Georgia Implied Consent Statute.[4]

Prior to trial, Hale sought to exclude the results of the portable alco-sensor test on the basis that he was in custody when it was conducted and should have been read his *Miranda* rights prior to its administration. But the trial court denied the motion to suppress, finding that Hale was not in custody during the administration of the test. Hale also sought to exclude the results of the Intoxilyzer 5000 breath test, arguing that he was denied the opportunity to seek an independent breath or blood test as allowed by law.[5] The trial court agreed that Hale had been denied this right and, accordingly, excluded the results of the later-conducted breath test at trial.[6] However, during preliminary jury instructions (while explaining the differences between DUI less-safe and DUI per se[7]), the trial court mentioned—over the State and Hale's objections—that this later-conducted breath test had been given but that its results had been suppressed. Thereafter, the jury convicted Hale on the offenses charged. This appeal follows.

1. Hale first contends that the trial court erred in denying his motion to suppress the results of the portable alco-sensor test. We

---

[4] *See* OCGA § 40-6-392.

[5] OCGA § 40-6-392 (a) (3) ("The person tested may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer.").

[6] We note that this test in fact returned a result that showed Hale was over the legal limit of 0.08.

[7] *See* OCGA § 40-6-391 (a) (1), (5).

disagree.

At the outset, we note that when reviewing a trial court's decision on a motion to suppress evidence, we are guided by the following principles: (1) the trial judge sits as the trier of fact on a motion to suppress, and his findings should not be disturbed if there is any evidence to support them; (2) the trial court's decision as to questions of fact and credibility "must be accepted unless clearly erroneous"; and (3) we must "construe the evidence most favorably to the upholding of the trial court's findings and judgment."[8] Nevertheless, when "the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review."[9]

Here, the record shows that, following the administration of the three field sobriety tests, the officer inquired as to whether anyone was available to retrieve Hale's motorcycle. In response, Hale asked if he was going to jail. When the officer replied in the affirmative, Hale immediately said, "Give me a blood test. Give me a breath test." The officer then explained that while he could administer the portable roadside alco-sensor test, it was not considered a state-administered test.[10] Nevertheless, as explained supra, the alco-sensor test was administered and returned a positive result.

Hale then sought to exclude the positive alco-sensor test result on the basis that he was in custody when the test was administered and had not yet been read his *Miranda* rights. The trial court, however, denied Hale's motion to suppress, concluding that Hale was not in custody at the time the test was given. And while we disagree with the trial court's reasoning for denying Hale's motion to suppress, we nevertheless conclude that the court did not err in admitting the results of the test.

Under Georgia law, "[a] police officer may briefly detain a motorist and administer field sobriety tests that are not of a 'testimonial or communicative nature' without advising the motorist of his or her rights against self-incrimination."[11] Once a person has been placed under arrest, however, an officer may not administer an alco-sensor or other field sobriety tests without first giving the

---

[8] *E.g., Polizzotto v. State*, 248 Ga. App. 814, 816 (1) (547 SE2d 390) (2001) (citation and punctuation omitted).

[9] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[10] *See* OCGA § 40-6-392.

[11] *State v. Peters*, 222 Ga. App. 484, 484 (474 SE2d 623) (1996); *see also Trudewind v. State*, 224 Ga. App. 223, 223-24 (480 SE2d 211) (1997) (holding that driver was only at point of being briefly detained when field sobriety tests were conducted, making *Miranda* warnings unnecessary).

person the requisite *Miranda* warnings, because the results of tests so obtained are inadmissible under OCGA § 24-9-20 (a).[12]

To determine whether or not a person who has not been formally arrested is nevertheless in custody for *Miranda* purposes, a "reasonable person" test is applied.[13] This analysis focuses on whether, under the circumstances, a reasonable person would conclude that his or her freedom of action was only temporarily curtailed and that a final determination of his or her status was merely delayed.[14] An officer's subjective intent to arrest, however, is relevant in this analysis to the extent such intent has been conveyed to the detainee.[15] And here, because Hale was informed of the officer's intent to place him under arrest, a reasonable person in Hale's position would believe that his or her freedom of action had been more than temporarily curtailed, which thereby placed him in custody for purposes of *Miranda*.[16]

---

[12] *See State v. O'Donnell*, 225 Ga. App. 502, 504 (2) (484 SE2d 313) (1997) (further noting that "an arrestee may not be compelled to do an act which is incriminating, but he may be compelled to submit to acts by others"); *see also* OCGA § 24-9-20 (a) ("No person who is charged in any criminal proceeding with the commission of any indictable offense or any offense punishable on summary conviction shall be compellable to give evidence for or against himself."); *State v. Norris*, 281 Ga. App. 193, 197 (635 SE2d 810) (2006) (explaining that Georgia case law holds that "alco-sensor and other field sobriety tests given to a person under custodial arrest are inadmissible where . . . administration of the tests has not been preceded by a *Miranda* warning" (footnote omitted)). *See generally Montgomery v. State*, 174 Ga. App. 95, 95 (1) (329 SE2d 166) (1985) (explaining that OCGA § 24-9-20 (a) is "more protective of the individual's right than the Fifth Amendment . . . [because] the Georgia statute has been construed to limit the State from forcing an individual to present *evidence*, testimonial or real" (citations omitted)).

[13] *See, e.g., Norris*, 281 Ga. App. at 195-96; *Turner v. State*, 233 Ga. App. 413, 415 (1) (a) (504 SE2d 229) (1998); *see also J. D. B. v. North Carolina*, 564 U. S. ___ (II) (A) (131 SC 2394, 180 LE2d 310) (2011) (noting that the purpose of the *Miranda* warnings is to protect individuals "against the coercive nature of custodial interrogation," and that these warnings are required "only where there has been such a restriction on a person's freedom as to render him in custody" (citation and punctuation omitted)).

[14] *Compare Jellie v. State*, 258 Ga. App. 261, 262-63 (1) (573 SE2d 490) (2002) (holding that because the facts did not show that defendant believed he was under arrest for DUI during his performance of field sobriety tests, *Miranda* warnings were unnecessary), *with Norris*, 281 Ga. App. at 196 (holding that defendant's detention ripened into a custodial arrest when he was told to turn around and place his hands behind his back, even though he was not expressly informed that he was under arrest).

[15] *Cf. Conner v. State*, 205 Ga. App. 564, 566 (3) (422 SE2d 872) (1992) (discussing officer's intent to arrest in context of Fourth Amendment analysis and deeming it significant to the extent the officer's intent is conveyed to a detainee).

[16] *See Price v. State*, 269 Ga. 222, 225 (3) (498 SE2d 262) (1998) ("[H]aving been informed that she was going to jail, a reasonable person would have believed that the detention was not temporary. Therefore, the failure to give the *Miranda* warnings renders evidence regarding the field sobriety tests inadmissible."); *State v. Kirbabas*, 232 Ga. App. 474, 476 (502 SE2d 314) (1998) ("[A]bsent the officer making any statement that would cause a reasonable person to believe that she was under arrest and not temporarily detained during an investigation, the officer's 'belief' that probable cause exists to make an arrest does not determine when the arrest is effectuated until the officer overtly acts so that a reasonable person would believe she was under arrest.").

But even though Hale was in custody for purposes of *Miranda*, the trial court did not err in admitting the results of the portable alco-sensor test because the portable test was administered in response to a demand from Hale, *not* the officer, thus making this situation clearly distinguishable from other custodial settings triggering the protections of *Miranda* and more akin to a spontaneous outburst from an unwarned suspect[17] or a test conducted pursuant to the Georgia Implied Consent Statute.[18] Accordingly, under these circumstances, the trial court did not err in admitting the results of Hale's portable alco-sensor test.

2. Hale next contends that the trial court erred in mentioning the excluded results of the Intoxilyzer 5000 breath test administered pursuant to the Georgia Implied Consent Statute when instructing the jury on the differences between Georgia's two types of DUI. We agree that the trial court erred, but conclude that this error was harmless and does not require reversal.

The record shows that after Hale was formally arrested, the officer read Hale his rights under the Georgia Implied Consent Statute, and Hale ultimately consented to the use of the Intoxilyzer 5000 breath test, which was administered upon his arrival at the police station. But both before and after this test was administered, Hale requested an independent blood test, which the State never allowed Hale to obtain. And based on this violation of Hale's right to seek an independent test, the trial court ordered that the results of the Intoxilyzer 5000 breath test be excluded.

Nevertheless, prior to the beginning of trial, Hale's trial counsel expressed a desire to educate the jury regarding Georgia's two forms of DUI and the differences between DUI per se and DUI less-safe,

---

[17] *See Phillips v. State*, 285 Ga. 213, 215 (2) (675 SE2d 1) (2009) ("'[A] spontaneous and unsolicited statement not made in response to any form of custodial interrogation is not subject to the strictures of *Miranda* and is admissible without the warnings having been given." (citation omitted)); *Delay v. State*, 258 Ga. 229, 231 (3) (c) (367 SE2d 806) (1988) (holding that defendant's unwarned, custodial statement was admissible because it was not initiated by officers and was instead a response to the officer's answer to the defendant's own question); *see also Everhart v. State*, 209 Ga. App. 82, 83 (2) (432 SE2d 670) (1993); *McClendon v. State*, 201 Ga. App. 262, 264 (1) (b) (410 SE2d 760) (1991); *Lewis v. State*, 179 Ga. App. 118, 118-19 (1) (345 SE2d 663) (1986); *Houser v. State*, 173 Ga. App. 378, 380-81 (2) (326 SE2d 513) (1985).

[18] *See State v. Carraway*, 251 Ga. App. 469, 470 (554 SE2d 602) (2001) (noting that breath tests administered under the Georgia Implied Consent Statute do not infringe upon a suspect's right against self-incrimination, making *Miranda* inapplicable); *State v. Lord*, 236 Ga. App. 868, 868 (513 SE2d 25) (1999) (same); *see also Kehinde v. State*, 236 Ga. App. 400, 400 (512 SE2d 311) (1999) (urine test); *State v. Moses*, 237 Ga. App. 764, 764 (516 SE2d 807) (1999) (blood test). *See generally State v. Coe*, 243 Ga. App. 232, 233-34 (2) (533 SE2d 104) (2000) (explaining that the privilege against self-incrimination is not implicated "by the choice granted by the Georgia Implied Consent Statute whether to submit to a chemical test of bodily substances such as blood, breath, or urine").

which was the type of DUI at issue in the trial. The trial court responded that it would give a preliminary instruction regarding this distinction but that, in doing so, it would mention the excluded breath test. In response, the State filed a motion in limine to prevent the court from mentioning the exclusion of the Intoxilyzer 5000 results, and Hale also sought to prohibit the court from mentioning the exclusion of the test during its preliminary instructions. Despite these objections, and after explaining the legal requirements of DUI less-safe[19] and DUI per se,[20] the court further clarified the difference between the two in the following manner:

> ... This is a less-safe case. You may be wondering about a test. Georgia law says that if an officer has reason to believe that a driver is above the legal limit, the officer can request a test. The law also says that if the person takes the test then they have the right to their own test. In this particular case in a prior hearing, I ruled that Mr. Hale took the state test but was not given the opportunity to have his own test. So I ruled that the state's test would not be admissible. So you won't hear any evidence in this case about a test because it is not relevant. This is a less-safe case. It doesn't matter whether the state's test would have been zero or above the legal limit because, in this case, the state must prove that Mr. Hale consumed alcohol and, as a result of consuming that alcohol, he was a less-safe driver.

Hale argues that this preliminary instruction was effectively a comment on his guilt or innocence by the trial judge, which deprived him of a fair trial. We disagree,[21] but conclude that this preliminary instruction was both unnecessary and improper.[22] An erroneous jury

---

[19] *See* OCGA § 40-6-391 (a) (1) ("A person shall not drive or be in actual physical control of any moving vehicle while . . . [u]nder the influence of alcohol to the extent that it is less safe for the person to drive[.]").

[20] *See* OCGA § 40-6-391 (a) (5) ("A person shall not drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended[.]").

[21] *See* OCGA § 17-8-57 ("It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."); *see also Caldwell v. State*, 273 Ga. App. 135, 139 (2) (614 SE2d 246) (2005) ("[W]e find that none of the challenged statements was an improper comment on the evidence under OCGA § 17-8-57. None of the statements expressed an opinion about whether the evidence had proven a material issue in the case, whether a witness was credible, or whether the defendant was guilty."). Additionally, the court instructed the jury that the court's role was not to comment upon the evidence and that the State was required to prove the defendant's guilt beyond a reasonable doubt.

[22] *See Bostic v. State*, 184 Ga. App. 509, 510 (3) (361 SE2d 872) (1987) (analyzing allegedly

instruction, however, is not "judged in isolation, but rather [is] considered in the context of the entire jury charge and the trial record as a whole to determine whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution."[23] Further, "an erroneous jury charge is not reversible unless it causes harm."[24]

Applying the forgoing principles to the case sub judice, we conclude that the trial court's error was harmless. While we fully recognize that the trial court sought to educate the jurors through its preliminary instructions, "its evidentiary preview was fraught with potential prejudice and [was] improper."[25] Nevertheless, when the trial court's comment is viewed in the context of the trial as a whole, the error was harmless because there is no reasonable probability that this preliminary instruction impacted the jury's verdict, given that the jury was presented with overwhelming evidence that Hale was a less-safe driver, including (1) a video of the traffic stop, which showed Hale's less-than-stellar performance on the field sobriety tests, his difficulty following instructions, and his occasionally belligerent demeanor; (2) Hale's admission to consuming alcohol; (3) the officer's testimony regarding Hale's traffic violation, his observations during the stop, and the positive results of the alco-sensor test; and (4) similar-transaction evidence.[26]

Accordingly, for all the foregoing reasons, we affirm Hale's convictions.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JUNE 30, 2011.

*Kristen C. Quinton*, for appellant.

---

erroneous preliminary explanation to jury in the context of a jury charge).

[23] *Ruiz v. State*, 286 Ga. 146, 150 (3) (686 SE2d 253) (2009) (citation omitted); *see also Bostic*, 184 Ga. App. at 510 (3) ("It is a fundamental rule of law that jury instructions must be viewed as a whole." (citation omitted)).

[24] *Ruiz*, 286 Ga. at 150 (3) (citation omitted); *see also Bostic*, 184 Ga. App. at 510 (3).

[25] *Wax v. State*, 293 Ga. App. 365, 365-66 (1) (667 SE2d 192) (2008) (holding that trial court committed harmless error by informing the jury at the beginning of trial that defendant had pleaded guilty to a prior DUI offense). *Cf. Rayburn v. State*, 234 Ga. App. 482, 485 (2) (506 SE2d 876) (1998) (holding that testimony regarding an inadmissible field sobriety test was harmless error because it was "merely cumulative" of other evidence of intoxication).

[26] *Compare Edmonds v. State*, 196 Ga. App. 190, 193-94 (1) (395 SE2d 566) (1990) (holding that trial court committed reversible error when it made preliminary remarks to the jury regarding the inadmissibility of a defendant's prior criminal record and the number of guilty pleas the court would hear later in the day, leaving the jury with an impression that most criminal defendants are guilty). *Cf. Rayburn*, 234 Ga. App. at 485 (2) (see note 25 *supra*).

*Charles A. Spahos, Solicitor-General, Joseph L. Stone, Assistant Solicitor-General*, for appellee.