## A01A1818. BIRDSALL v. THE STATE.
(562 SE2d 841)

MIKELL, Judge.

After a bench trial, Alfred John Birdsall was found guilty of driving with an unlawful alcohol concentration and of failure to maintain lane. He appeals from the denial of his motion for new trial, arguing that the trial court erred in permitting the state's expert to testify to the results of Birdsall's blood test, despite the state's failure to provide him with a copy of the printout of the gas chromatograph, on which the testimony was based. For the reasons that follow, we affirm.

On March 18, 1998, Birdsall filed a written demand for "statutory discovery" under OCGA §§ 40-6-392 (a) (4) and 17-16-23, specifically requesting machine-printed results of all tests performed on the defendant. On that date, the Supreme Court had decided *Price v. State*,[1] in which it held that the printed results of a gas chromatograph analysis of a defendant's blood sample were discoverable under OCGA § 40-6-392 (a) (4). In addition, Birdsall filed two motions in limine, seeking to suppress the results of his blood test. Finally, in April 1998, the state filed a motion pursuant to *Gaston v.*

---

[1] 269 Ga. 222 (498 SE2d 262) (1998).

*State*,[2] asking the court to determine, in advance of trial, the admissibility of the blood test results.

A hearing was held on the motions on July 17, 1998. At the hearing, James W. Panter, supervisor of the implied consent section of the forensic sciences division of the Georgia Bureau of Investigation, testified that a gas chromatograph was used to determine the blood alcohol content of Birdsall's blood sample, which was 0.24 grams. Birdsall's counsel announced: "Your honor, of course, I would reserve objections to these results based on all of my motions." The prosecutor inquired as to counsel's specific objections, and counsel replied that Panter's testimony was not based on his personal knowledge. During cross-examination, Panter testified that his personal knowledge of the results was based on the numerical data printed out by the chromatograph. Panter also testified that an official report was generated in the case, indicating the defendant's name, a description of the evidence received, the test results, Panter's opinion as to the blood alcohol level, and Panter's signature. The prosecutor moved to admit the official report, which had been marked for identification as Exhibit 6, stating: "If he has any objections to it being tendered, I'd ask him to raise it so I can respond and cure whatever problem he says exists, if there is any." Defense counsel interposed a hearsay objection. The prosecutor laid a foundation for the admission of Exhibit 6 under the business records exception to the rule against hearsay. The state then moved to tender Exhibit 6 as a business record. The following colloquy ensued:

> The court: I think it's probative. It certainly counts under the business record exception, possibly others.
> Mr. Eidex: . . . So its admitted as state's Exhibit number 6.
> Mr. Chestney: Your Honor, for the record, that being admitted, my other objections are the objections I've raised in my motions that it would take me some time to argue. I'll be happy to submit it.
> The court: . . . I am not going to fail to consider all of your objections.

The state's attorney then suggested further argument at a later date, and the matter was rescheduled. Defense counsel did not mention that the state had failed to provide him with a copy of the printout.

No additional argument occurred. On June 4, 1999, the trial court issued an order denying Birdsall's motions in limine. The order

---

[2] 227 Ga. App. 666, 669-670 (2) (490 SE2d 198) (1997).

did not address the state's *Gaston* motion. Accordingly, the discovery dispute was not resolved prior to trial.[3]

The case was tried on October 7, 1999. The state called Panter as a witness and laid a foundation for the admission of the report of Panter's opinion as to the blood alcohol level. Birdsall objected to the testimony about the results on the ground that the numerical results printed out by the chromatograph would be the best evidence of the analysis of his blood. Panter stated that he had brought the printout with him. At that point, defense counsel again objected to any testimony about the results because the state had neglected to produce the printout in response to the defense's discovery demand. The court noted that the state sought to introduce only the summary report (Exhibit 6), not the printout.[4] Counsel argued that the admission of Exhibit 6 and any testimony concerning Birdsall's test results would obviate the discovery process. The court overruled the objection and permitted Panter to testify to the result of the blood analysis. This ruling is enumerated as error.

The precise issue in this case is one of first impression in this state, and we frame it thusly: Does a trial court commit reversible error when it permits an expert to testify, over objection, to the results of a defendant's chemical test, when the state has failed to furnish the test data underlying those results, and the data were properly requested pursuant to OCGA § 40-6-392 (a) (4)? The answer is: not always.

At the outset, we note that the penalties set out in OCGA § 17-16-23 (c) for the state's failure to furnish the written scientific reports to the defense prior to trial are inapplicable to the case at bar. That is because the printout sought by Birdsall does not constitute a scientific report within the meaning of *Rayburn v. State*.[5]

> The common element of scientific reports is the inclusion of the examiner's findings based on scientific analysis or his or her opinion. Checklists, expert's notes, work product, *recordation of data*, internal documents, and graphs do not fall in this definition. Nor do individual test results that do not include any expression of the expert's conclusions or opinion.[6]

---

[3] We do not agree with the state's assertion that the defense, by letter, withdrew its objection to Exhibit 6. The letter did not address that issue.

[4] The state had provided the summary report to the defense on April 14, 1998.

[5] 234 Ga. App. 482 (506 SE2d 876) (1998).

[6] (Citations omitted; emphasis supplied.) Id. at 484 (2). The appellant's brief incorrectly states that we reversed the trial court in *Rayburn*. Actually, we held that the trial court's failure to compel discovery and its decision to admit testimony concerning the results of the defendant's performance on a field sobriety test were harmless error. Id. at 485.

In the case sub judice, the documents sought by the defense were not included in the record. However, as we understand from the transcripts and briefs, the gas chromatograph prints out data on a chart called a "chromatogram" (hereinafter "printout"). The expert looks at the printout and then prepares a report. In this case, the report, Exhibit 6, was entitled "Division of Forensic Sciences OFFICIAL REPORT." It concluded with the chemist's opinion that the "blood is positive for ethyl alcohol 0.24 grams %." Exhibit 6 is clearly the "scientific report" contemplated by *Rayburn* and OCGA § 17-16-23. The printout, on the other hand, is a graph or "recordation of data" and is not a scientific report. Therefore, *Rayburn,* along with other cases interpreting OCGA § 17-16-23, do not govern the outcome of the case at bar.[7]

Instead, the case is controlled by OCGA § 40-6-392 (a) (4), the narrow statute dealing with chemical tests for the detection of alcohol or drugs in a driver's blood. This statute provides that a person who has submitted to a chemical test shall be given, upon request, "full information concerning the test." Thus, it is reversible error for a trial court to quash a subpoena seeking the printout Birdsall requested.[8] Moreover, Birdsall is correct that *Price* and the statutory language imply that a subpoena is not required and that a request for discovery directed to the state is adequate to prompt production of the printout, whether it is in the hands of the prosecutor or in the files of the state crime laboratory.[9] Therefore, Birdsall was entitled to the printout pursuant to OCGA § 40-6-392 (a) (4).

This does not end our inquiry, however. Unlike OCGA § 17-16-23, OCGA § 40-6-392 (a) (4) specifies no deadline for requesting "full information," no timetable for supplying the information, and no penalty for the state's failure to produce it. Neither the timing of the defendant's request nor the timetable for production is an issue in this appeal. But the penalty for noncompliance is squarely raised by the enumeration of error and briefs. We do not agree with Birdsall that the penalty should necessarily be exclusion of the printout and

---

[7] Accord *Williams v. State,* 251 Ga. 749, 754 (3) (c) (312 SE2d 40) (1983) (holding that a microspectrophotometer graph printout was not a scientific report discoverable under OCGA § 17-7-211, which was repealed and reenacted to apply to misdemeanor cases. See OCGA § 17-16-23; Ga. L. 1994, p. 1895, § 4); *Dunn v. State,* 178 Ga. App. 6, 9 (2) (341 SE2d 877) (1986) (holding that the printout of a machine used to weigh marijuana was not a scientific report).

[8] *Price,* supra.

[9] The state's argument that it did not possess the printout and therefore could not have produced it is controlled adversely to the state by *Moody v. State,* 210 Ga. App. 431, 432 (1) (436 SE2d 545) (1993) (an existing scientific report in the possession of the state crime lab is deemed to be available to the prosecution).

any oral testimony based on the test results, which were, in turn, based on the printout.[10]

On the other hand, exclusion of the printout, and the resulting test results and oral testimony, might be very appropriate upon a showing of bad faith,[11] or upon a showing of a failure to obey an order requiring production. If the record revealed any additional attempt by the defense to obtain the printout, other than including it in a list of items sought early in the litigation, exclusion of the expert's opinion might well be required. However, there was no attempt by the defense to push for discovery of the printout, no refusal by the state to produce that document, and no request by the defense for a continuance for additional time to examine the printout, which was available at trial. Under these narrow circumstances, we are unwilling to hold that the trial court abused its discretion in admitting the testimony of the state's expert witness, despite the prosecutor's failure to produce the printout before trial.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 28, 2002 — 

*Chestney-Hawkins Law Firm, Robert W. Chestney, Sherry B. Lantz,* for appellant.

*Carmen D. Smith, Solicitor-General, Oliver E. Murray, Jody L. Peskin, Assistant Solicitors-General,* for appellee.

---

[10] See generally *Mowery v. State*, 234 Ga. App. 801 (507 SE2d 821) (1998) (exclusionary rules are not favored).

[11] Unlike the statute governing reciprocal discovery in felony cases, OCGA § 17-16-6, the general statute concerning discovery of scientific reports in misdemeanor cases, OCGA § 17-16-23, does not require a showing of prejudice and bad faith before exclusion. However, a trial court's failure to suppress under OCGA § 17-16-23 can be harmless error. Compare *Rayburn*, supra, with *Wester v. State*, 260 Ga. 228 (391 SE2d 765) (1990), and *Alexander v. State*, 203 Ga. App. 375 (416 SE2d 762) (1992).