## A09A1474. STETZ v. THE STATE.
### (687 SE2d 839)

SMITH, Presiding Judge.

Following a bench trial on stipulated facts, Justin Stetz appeals from his DUI per se conviction. In two enumerations, he contends that the trial court erred in denying his motion for additional discovery. We disagree and affirm.

Stetz was stopped by a DeKalb County police officer for a safety belt violation. The officer arrested Stetz after he failed three field sobriety tests and an alco-sensor test of his breath registered positive for the presence of alcohol. The officer read Stetz the implied consent warning and Stetz agreed to take a state-administered chemical test of his breath. The two test results from the Intoxilyzer 5000 revealed a blood alcohol level of 0.156 and 0.154. The parties stipulated that the officer properly read Stetz the implied consent warning and that the Intoxilyzer 5000 was "operating with all parts attached." The trial court found Stetz guilty of driving with an unlawful blood alcohol concentration and failing to use a safety belt.

In two enumerations of error, Stetz contends that the trial court erred in denying his motion for additional discovery. Stetz filed a "Motion for Disclosure of Scientific Reports" pursuant to OCGA § 40-6-392 (a) (4) requesting the State to provide certain information. In that motion, Stetz requested:

> (a) Any scientific report or the result of any test or experiment or analysis made for any purpose and reason regarding the above-captioned case, which is in the possession of the prosecution or the arresting or testing officers[;]
>
> (b) For the Intoxilyzer machine used to test Defendant, copies of the applicable pages of the log book kept in accordance with State regulations wherein the time, date, name and result from each and every Intoxilyzer 5000 test procedure is recorded, including the ten (10) results prior to Defendant's test(s) and the ten (10) results after Defendant's test(s). Furthermore, if available, Defendant hereby requests copies of any and all cumulative print-outs made for said machine, covering the ten previous and the ten subsequent tests, plus all tests made upon the Defendant. If no printout is currently available in thermal or copied form,

Defendant hereby requests that such print-out be generated immediately, and a copy made of same for production under this lawful request[;]

(c) Copies of any and all operator's manuals, service manuals, service update reports, recalibration memos or any other written data received from the manufacturer or from any State or Federal office pertaining to the particular make and model Intoxilyzer 5000 used in testing Defendant[;]

(d) Copies of all service, repair, modification and calibration records within the possession of the prosecution for the particular Intoxilyzer 5000 machine used to test Defendant including, but not limited to, (i) removal, disengagement, replacement or change out of or reinstallation of any part of the machine, (ii) repair records for any part of the machine, (iii) programming the machine to "override" the normally reported causes of error in an insufficient or contaminated breath sample, and (iv) any and all records indicating erroneous breath "value" readings taken from said machine at any time;

(e) The results of any chemical tests, scientific tests, analyses or experiments in the possession of the State which were performed by either the arresting officer, the testing officer, or the State Crime Lab, or the testing machine manufacturer, for this Defendant or for any other purpose, which may tend to show in any way evidence of testing machine unreliability, or evidence favorable to the Defendant's case. In particular, Defendant demands copies of any and all memos, circulars, notices, advisory letters, or similar communications within the State's possession relating to (i) the non-specificity of the Intoxilyzer 5000, (ii) how health problems, such as elevated body temperature of the subject or dental problems may cause false high readings, (iii) how acetaldehyde may cause an inaccurate reading on the Intoxilyzer 5000[;] and (iv) how the air blank reading is a "floating" setting rather than an analysis of the air in the sample's chamber; [and] (v) information pertaining to the influence of interfering substances such as mouth wash and solvents upon the breath machine's reliability;

(f) Copies of any and all health and disabilities screening questionnaires used by the police in connection with Defendant's submittal to the Intoxilyzer 5000, and in preparation for possible incarceration of Defendant after testing him[;]

(g) A copy of any and all supplemental notices, bulletins, letters or circulars received from the Department of Public Safety, the Georgia State Patrol, or the GBI pertaining to servicing, repairing, calibrating or modifying the Intoxilyzer 5000[;]

(h) A copy of any bulletins, letters, notices, training manuals or circulars received from any governmental entity or government official or the machine manufacturer for the Intoxilyzer 5000 pertaining to possible interference or contamination of the test result caused by the test subject being exposed to interfering substances[;]

(i) A copy of any notices, letters, bulletins, or circulars received by the State at any time from any source indicating that the Intoxilyzer 5000 can give false readings for the test subjects with special medical problems[;]

(j) A copy of any notices, letters, bulletins, or circulars received by the State at any time from any source indicating that the Intoxilyzer 5000 can give false readings for test subjects who are taking medications[;]

(k) A copy of any notices letters, bulletins or circulars received by the State at any time from any source indicating that the Intoxilyzer 5000 was approved for use.

The trial court held a hearing on Stetz's motion. Stetz complained that although the State produced the breath test slip, it failed to provide the requested additional discovery. During the hearing, Stetz's counsel attempted to narrow the many items requested in his motion stating, "I asked for many things, Judge, but I think I narrowed it down to a few." In fact, however, Stetz requested some additional information not previously requested in the motion: the name of the area supervisor who calibrated the Intoxilyzer machine, information on software packages that were used to upgrade the machine, and a list of approved chemical test devices. He argued that the other requested discovery was relevant to his defense to determine the accuracy of the test and the testing equipment. The State countered that it provided Stetz with the accusation, a list of witnesses, and scientific reports and that it either did not have the additional information or was not required to produce it. Following the argument of counsel, the trial court denied Stetz's motion.

OCGA § 40-6-392 (a) (4) provides that "[u]pon the request of the person who shall submit to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests shall be made available to him or his attorney." Our courts have

defined the scope of "full information" under that Code section only with regard to testing using gas chromatography:

> OCGA § 40-6-392 (a) (4) expanded previous discovery procedures which allowed discovery only of written scientific reports, and is consistent with the broad right of cross-examination embodied in OCGA § 24-9-64. Thus, as a general rule, a defendant now has the right to subpoena memos, notes, graphs, computer printouts, and other data relied upon by a state crime lab chemist in obtaining gas chromatography test results.

(Citations, punctuation and footnote omitted.) *Cottrell v. State*, 287 Ga. App. 89, 90 (1) (651 SE2d 444) (2007), citing *Price v. State*, 269 Ga. 222, 224 (2) (498 SE2d 262) (1998). The gas chromatography test "generates a printout containing a graph and numerical data that is interpreted by the chemist." *Dunn v. State*, 292 Ga. App. 667, 669 (665 SE2d 377) (2008).

Here, Stetz submitted to a test of his breath by the Intoxilyzer 5000. An intoxilyzer measures a person's blood alcohol concentration from a breath sample given by blowing into the machine, which then produces a printout of the test results. See, e.g., *State v. Carter*, 292 Ga. App. 322, 325-326 (665 SE2d 14) (2008). We must therefore decide the scope of "full information" under OCGA § 40-6-392 (a) (4) when the "test or tests" of a person's blood alcohol concentration is determined by an intoxilyzer.[1] Unlike the gas chromatography test, which produces data that has to be interpreted by a chemist to determine blood alcohol level, an intoxilyzer does not produce raw data but rather prints out the actual test result showing the person's blood alcohol level. In other words, the machine computes the test result. Therefore the only discoverable information from an intoxilyzer test under OCGA § 40-6-392 (a) (4) is the computer printout of the test result.[2] See, e.g., *Birdsall v. State*, 254 Ga. App. 555, 558 (562 SE2d 841) (2002). This conclusion is consistent with the holdings of *Cottrell*, supra, and *Price*, supra.

---

[1] This court has previously addressed information sought pursuant to OCGA § 40-6-392 (a) (4) where the test was performed using an intoxilyzer, but none of those cases has clearly defined the scope of "full information" with regard to that testing method. See *Rosandich v. State*, 289 Ga. App. 170, 173 (2), n. 3 (657 SE2d 255) (2008) ("We need not decide, and thus do not consider, whether the extensive materials requested by Rosandich properly fell within the scope of OCGA § 40-6-392 (a) (4)."); *Cottrell*, supra, 287 Ga. App. at 90-91 (1) (pretermitting scope of OCGA § 40-6-392 (a) (4), information sought was not relevant); *Birdsall v. State*, 254 Ga. App. 555, 558 (562 SE2d 841) (2002) (defendant entitled to printout pursuant to OCGA § 40-6-392 (a) (4)).

[2] We come to this conclusion with regard to OCGA § 40-6-392 (a) (4) only and do not determine the scope of discoverable information sought by subpoena.

Because the evidence showed that the test result was provided to Stetz, we cannot say that the trial court abused its discretion here. See *Cottrell,* supra, 287 Ga. App. at 91 (1) (ruling on discovery request reviewed for abuse of discretion).

*Judgment affirmed. Phipps and Bernes, JJ., concur.*

DECIDED OCTOBER 28, 2009 —
RECONSIDERATION DENIED DECEMBER 9, 2009.

*Head, Thomas, Webb & Willis, Jerry L. Webb, Jr.,* for appellant.
*Robert James, Jr., Solicitor-General, Che'ferre L. Young, Assistant Solicitor-General,* for appellee.