A10A0837. TEASLEY et al. v. THE STATE.
(704 SE2d 248)

ADAMS, Judge.

Elizabeth and Jerry Teasley appeal the denial of their motion for discharge and acquittal, in which they asserted that they had been denied their constitutional right to a speedy trial. We reverse in part and remand with instruction.

The record shows that on August 31, 2006, the Teasleys were indicted on one count of cruelty to children for allegedly injuring their three-week-old child between April 9 and 13, 2006; he had been

154

diagnosed with a broken leg. Arraignment was scheduled for October 5, 2006 in the Superior Court of Hart County, during that court's August term.[1] On October 10, 2006, as a part of a document addressing other matters, Elizabeth demanded a public and speedy trial pursuant to the Georgia Constitution and Constitution of the United States. She reiterated the demand in similar fashion in March 2007, but she never made a Georgia statutory demand under OCGA § 17-7-170. No other demands are in the record except the motion for discharge and acquittal itself.

In April 2007, in response to a notice of potential conflict of interest of the public defender's office, the court ordered that the public defender be relieved of representing Jerry Teasley and that Martin Melton be appointed instead. The case was not tried during the February 2007 term of court, and there is no information in the record explaining why.

In October 2007, Melton moved to continue the trial, which had been scheduled for October 15, because both he and the District Attorney's office had "unexpectedly received almost 100 pages of medical records" and a large number of photographs that counsel needed to examine. The court granted the motion and ordered that the case be rescheduled to the February 2008 term of court.

Meanwhile, in November 2007, Melton filed a notice that he had accepted a position with the State and that he could no longer represent Jerry Teasley. The court ordered that Melton be relieved and appointed the public defender on the ground that "no conflict appears." But on December 12, 2007, the court ordered that the public defender again be relieved of representing Jerry because "a serious potential conflict of interest exists"; the court appointed Harvey Wasserman instead. Nevertheless, on March 12, 2008, the public defender filed a notice that she had determined that no potential conflict of interest existed, and she requested that she be allowed to represent both Teasleys.

In April 2008, the court placed the case on a calendar for June 30, 2008, which was during the February 2008 term of court. The defense provided a list of witnesses on April 23, 2008. But the case was not tried at that time, and there is no information in the record explaining why.

During the August 2008 term of court, both Jerry and Elizabeth filed separate notices indicating that they waived any potential conflict of interest arising out of the joint representation of the public defender's office. In September, subpoenas were filed that

---

[1] Hart County has two terms, which begin on the "Third Monday in February and August." OCGA § 15-6-3 (27) (C).

indicated a trial date of September 22, 2008. On September 16, the defense submitted a witness list. But again, no trial occurred during that term, and there is no information in the record explaining why.

In April 2009, the case was assigned to a new judge because the assigned judge recused himself. The State has admitted that the recusal caused a continuance, and the February 2009 term of court passed without a trial. At some point in 2009, the Teasleys understood the case would be called for trial "at a special week scheduled November 2, 2009." But when the calendar for that day was published, it did not list the case as being scheduled for trial. On October 14, 2009, during the August term of court, the defendants moved for discharge and acquittal based on the violation of their constitutional right to a speedy trial. The matter was heard on November 2, 2009, three years and two months after indictment.

At the hearing on the motion, Elizabeth and a relative testified that the delay had affected the Teasleys because the child had been taken away from them and placed with Elizabeth's parents for three years.[2] This concerned Elizabeth because her mother was prone to seizures and unable to drive a car. She was worried that something could happen to the child as a result. She experienced stress because tensions arose with her parents, including one time when her parents obtained a restraining order against Jerry and her. Elizabeth and Jerry had to comply with two family case plans. They attended parenting classes, anger management classes, and took psychological tests. Elizabeth testified that she and her husband have been nervous and anxious every day for the three years about going to trial, and had been living under a cloud of suspicion. Also, while awaiting trial, Elizabeth became pregnant again. One week before she was to deliver, the Department of Family and Children Services contacted her and indicated it was going to take the baby and place it in foster care because of the charges pending against them. Elizabeth experienced anxiety as a result, including during her delivery. Ultimately she was allowed to keep the child but only under supervision.[3] Elizabeth testified that there have been six times in the three years that she expected the case to be tried and that neither she nor Jerry ever asked for the trial to be postponed or failed to appear at any court proceedings. Jerry did not testify at the hearing.

Some colloquy was presented at the hearing to the effect that in the spring of 2008, Harvey Wasserman had stopped defending Jerry because he was not getting paid by the State for his work as a conflict attorney because of the State's failure to fund the public defender

---

[2] Shortly before the hearing, the victim had been returned to her parents.
[3] Jerry has another child from a previous relationship who also lives with the family.

system. The defendants assert that this did not cause a delay because they waived any conflict, agreed to be represented by the same counsel, and never asked for a continuance based on the issues of representation.

In further colloquy, defense counsel essentially admitted that she relied on the State's assurances that the case would be tried as an explanation for not making further efforts to demand a speedy trial. The State claimed that some delay occurred when the defense requested time to perform a bone density test on the child and that it never received a test report. There is no documentation in the record to support this statement. The defendants denied that the bone density test caused any delay. Also, the State admitted that it asked for a continuance in 2008 when a witness was not available to testify. The State asserted that the defense had made an oral request for a continuance one other time in order to find an expert witness. But defense counsel asserted that the State requested the continuance and that she did not object because she needed time to get experts.

The court denied the Teasleys' motion "for the reasons enumerated orally in Court." The court gave the following reasons at the hearing: that the over three-year delay raised a presumption of prejudice; that the reasons for delay were hard to sort out; that there had been a continuance by the defense; that there were "some problems" in obtaining the medical testimony or medical records; that it did not seem fair to charge the State with the State's failure to fund the public defender system; that the Teasleys had never filed a statutory demand for speedy trial; that the motion for discharge and acquittal was filed "shortly before this case was assumed to be appearing on a trial calendar for November 2, 2009"; that there was no evidence that the delay had affected the defendants' ability to present their case; and that every defendant is adversely affected like the Teasleys were while awaiting trial. The court also stated, "I think the Court has a duty to balance the victim's rights against the rights of the Defendants, the allegation in this case being abuse of a very small child." The court also relied on the fact that the State offered, during colloquy, to try the case the following week: "I don't know, but the State has offered to bring this to trial next week based on your speedy trial demand and I think that's sufficient, so I'm going to deny the motion." The Teasleys contend the trial court erred in several regards.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."[4] The

---

[4] "The speedy trial right enshrined in the Georgia Constitution is coextensive with the federal guarantee." *Ruffin v. State*, 284 Ga. 52, 54 (2) (663 SE2d 189) (2008).

right is "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell*, 383 U. S. 116, 120 (86 SC 773, 15 LE2d 627) (1966).

> "While the constitutional speedy trial provisions primarily safeguard the defendant's rights, they also recognize the public's interest — including the interest of crime victims — in the resolution of criminal cases without unnecessary delay, and the prosecutor and the trial court have a responsibility to protect those interests." [Cits.]

*Phan v. State*, 287 Ga. 697, 698 (699 SE2d 9) (2010). "Absent an abuse of discretion, the decision of the trial court must be affirmed. [Cit.]" *State v. Johnson*, 274 Ga. 511, 512 (555 SE2d 710) (2001).

1. The determination of whether the constitutional right to a speedy trial has been violated has two stages. The court first determines "whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered 'presumptively prejudicial.' " *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008). "If not, the speedy trial claim fails at the threshhold." Id. Otherwise, the court proceeds to "application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial." Id.

The length of delay in this case is three years and two months, which is presumptively prejudicial, as the State concedes. See, e.g., *Weis v. State*, 287 Ga. 46, 49 (1) (a) (694 SE2d 350) (2010) (three-and-a-half year period is presumptively prejudicial); *Ruffin*, 284 Ga. at 55 (2) (a) (two years, two months, and twenty-three days is presumptively prejudicial); *Perry v. Mitchell,* 253 Ga. 593 (322 SE2d 273) (1984) (delay of more than two years is "deplorable"). The trial court so held.

2. The second-stage, four-factor balancing test raises these questions:

> [i] whether delay before trial was uncommonly long, [ii] whether the government or the criminal defendant is more to blame for that delay, [iii] whether, in due course, the defendant asserted [the] right to a speedy trial, and [iv] whether he [or she] suffered prejudice as the delay's result.

*Doggett v. United States*, 505 U. S. 647, 651 (112 SC 2686, 120 LE2d 520) (1992). See also *Barker v. Wingo*, 407 U. S. 514, 530 (92 SC 2182,

33 LE2d 101) (1972) (describing four factors as "[l]ength of delay, the reason for the delay, the defendant's assertion of [the] right, and prejudice to the defendant"). Under the test,

> none of these factors are a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test. Thus, we must apply and weigh these factors together to determine if [the defendant's] constitutional right to a speedy trial has been abridged.

(Citations omitted.) *Layman v. State,* 284 Ga. 83, 84 (663 SE2d 169) (2008). The analysis requires courts to " 'engage in a difficult and sensitive balancing process' and 'necessarily compels them to approach speedy trial cases on an ad hoc basis.' " *Ruffin,* 284 Ga. at 56 (2), quoting *Barker,* 407 U. S. at 530, 533.

(a) The first factor requires consideration of "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett,* 505 U. S. at 652 (II). "[An] uncommon length of the pretrial delay thus merits consideration beyond its use as a liminal screening mechanism." *Ruffin,* 284 Ga. at 57. Here, we find nothing in the trial court's order to show that it considered whether the delay before trial was uncommonly long given the circumstances of the case. "To the extent the trial court overlooked this factor in the four-factor balancing process, it erred." *Ruffin,* 284 Ga. 59. The pretrial delay in this case — three years and two months — greatly exceeds the amount of time necessary to establish a presumption of prejudice. See *Doggett,* 505 U. S. at 652, n. 1 (delay approaching one year is presumptively prejudicial). Thus, this factor weighs heavily against the State. See, e.g., *Ruffin,* 284 Ga. at 58-59.

(b) With regard to who is to blame for the delay, the State concedes the trial court did not attribute the delay to either party as required by *Barker v. Wingo.* Rather, the court stated that the reasons for delay were hard to sort out; that there had been a continuance; that there were "some problems" in obtaining the medical testimony or medical records, and that it did not seem fair to charge the State with the State's failure to fund the public defender system.

To evaluate the reasons for delay, courts are required to "assign[ ] various degrees of weight to the different reasons provided by the prosecution and the defense respectively." *Layman,* 284 Ga. at 85, citing *Barker,* 407 U. S. at 531. See also *Doggett,* 505 U. S. at 657. And the Supreme Court of Georgia has held that "evidence of a systemic breakdown of the public defender system impacting a particular

defendant should be considered under the reasons for delay." *Phan*, 287 Ga. at 699. The delay resulting from such a breakdown can be charged to the State. Id. Thus, the trial court erred by assuming that the State could not be blamed for the State's failure to fund the public defender system. The matter, however, was not fully analyzed.

Evaluating the reasons for the entire delay ourselves shows that of the seven terms of court available for trial, no reason was given for delay in four of the terms, the State caused the delay in two terms (when the judge was recused,[5] and when the State admitted that it once sought a continuance), and the defendants caused the delay in one term by asking for a continuance.[6] The defendants probably should have or share blame for the delay during an additional term because they admitted they acquiesced in the State's continuance, and they may have orally requested a continuance on another occasion.

"Where no reason appears for a delay, we must treat the delay as caused by the negligence of the State in bringing the case to trial. [Cit.]" *Brannen v. State*, 274 Ga. 454, 455-456 (553 SE2d 813) (2001). See also *Bell v. State*, 287 Ga. App. 300, 302 (651 SE2d 218) (2007). Even if these delays were unintentional, they fall on the shoulders of the State, although they are not weighed heavily:

> Unintentional delays caused by overcrowded court dockets or understaffed prosecutors are among the factors to be weighed less heavily than intentional delay, calculated to hamper the defense, in determining whether the Sixth Amendment has been violated but, as we noted in *Barker v. Wingo*, 407 U. S. 514, 531 [(92 SC 2182, 2192, 33 LE2d 101)] (1972), they must "nevertheless . . . be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."

*Strunk v. United States*, 412 U. S. 434, 436 (93 SC 2260, 37 LE2d 56) (1973). "Under such circumstances, this factor 'is . . . relatively benign but definitely negative.' [Cits.]" *Brannen*, 274 Ga. at 456. Nevertheless, as explained by the United States Supreme Court, "the weight we assign to official negligence compounds over time . . . [t]hus, our toleration of such negligence varies inversely with its

---

[5] "The relevant inquiry for purposes of the second factor is not whether the *prosecutor* or the accused bears more responsibility for the delay, but whether the *government* or the criminal defendant is more to blame for that delay." (Punctuation and footnote omitted; emphasis in original.) *Ruffin,* supra, 284 Ga. at 61 (2) (b) (ii).

[6] "Assigned counsel, just as retained counsel, act on behalf of their clients, and delays sought by counsel are ordinarily attributable to the defendants they represent." *Vermont v. Brillon,* 556 U. S. 81 (129 SC 1283, 173 LE2d 231) (2009).

protractedness." *Doggett,* 505 U. S. at 657. "[P]ersistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it." *Ruffin,* 284 Ga. at 61.

Applying the applicable law, we conclude that in this case, at least four terms of delay were caused by the State, perhaps two by the defendant, and one with blame falling on both parties. Given that it was possible to at least partially assign blame for the delays in this case, it was error for the trial court to fail to assign blame. See *Ruffin,* 284 Ga. at 61. Because of the protracted delay attributed largely to the State, this factor weighs against the State.

(c) A defendant who fails to demand a speedy trial does not forever waive his right. *Barker,* 407 U. S. at 528. "This does not mean, however, that the defendant has no responsibility to assert his right, [rather] the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." Id.[7]

First, the trial court erred by relying in part on the fact that the Teasleys had not filed a statutory demand. "[T]he filing of a speedy trial demand is not a prerequisite for a plea in bar for failure to have a speedy trial on constitutional grounds." (Citation and punctuation omitted.) *Hayes v. State,* 298 Ga. App. 338, 345 (2) (c) (680 SE2d 182) (2009). Rather, a court must determine whether "the accused has asserted the right to a speedy trial 'in due course.' [Cit.]" *Ruffin,* 284 Ga. at 63 (2) (b) (iii). Compare *Brannon,* 274 Ga. at 456 (objecting to continuance, stating readiness for trial, and suggesting witnesses should be held in contempt for failing to appear, "cannot be construed as an assertion of the right to a speedy trial"). "[T]he failure to exercise that right is entitled 'to strong evidentiary weight' against the defendant." (Citations and punctuation omitted.) Id. See also *Harris v. State,* 284 Ga. 455, 456 (667 SE2d 361) (2008).

Here, less than two months after indictment, Elizabeth Teasley demanded in writing a public and speedy trial pursuant to the Georgia Constitution and Constitution of the United States, and she specifically invoked the Sixth Amendment and the corresponding paragraph of the Constitution of Georgia. Compare *Bell v. State,* 287 Ga. App. at 302 (trial court properly weighed against the defendant a 10-month

---

[7] The burden is on the State to bring the defendant to trial:

A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, . . . society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest.

*Barker,* 407 U. S. at 527.

delay between indictment and a demand for speedy trial), and cases cited therein. She reiterated the identical demand in March 2007. Defense counsel admitted she failed to make further demands based on assurances of trial by the State. Elizabeth asserted her right to a speedy trial again in October 2009, two and one-half years after her previous assertion, by way of the motion for discharge and acquittal, after finding out that the case had not been placed on the October 2, 2009 calendar as she had been assured earlier. We conclude this factor weighs against Elizabeth Teasley but not heavily.

With regard to Jerry Teasley, we find no demand in the record other than the motion for discharge and acquittal; he was represented by different counsel at the time of Elizabeth's first two requests. Thus, he waited three years and two months from his indictment to first assert his right to a speedy trial. Where a defendant waits years to assert the right just prior to trial, it is difficult to show denial of the right to a speedy trial. *Brannon*, 274 Ga. at 456. See also *Harris*, 284 Ga. at 456-457 (no prejudice where defendant waited five years to assert the right to a speedy trial).

(d) The last of the four *Barker* factors is prejudice. In analyzing that factor, we "consider three interests: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting the possibility that the defense will be impaired." *Brannen*, 274 Ga. at 456. "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' [Cit.]" *Doggett*, 505 U. S. at 654 (III) (A). Here, there was no pre-trial incarceration, and the defendants do not contend that their defense has been hampered.

Yet "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Barker*, 407 U. S. at 533. See also *Ruffin*, 284 Ga. at 55 ("Release on bond does not absolve the State of its constitutional obligation to bring those accused of committing crimes to trial in a speedy manner.") Also, "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U. S. at 655 (III) (A). A finding of presumptive prejudice "cannot alone carry [the defendants'] Sixth Amendment claim without regard to the other *Barker* criteria. Instead, it is part of the mix of relevant facts, and its importance increases with the length of delay." (Citations and punctuation omitted.) *Harris*, 284 Ga. at 456-457. But, "the extent to which a defendant must prove prejudice from a delay in prosecution is directly related to the government's reasonableness in its pursuit of that defendant." *Hayes*, 298 Ga. App. at 349 (2) (d) (case

of aggravated assault, aggravated battery, and cruelty to children characterized as "relatively uncomplicated"). Finally, as explained by the Supreme Court, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U. S. at 652 (II). And the delay that can be tolerated rises with the seriousness and complexity of the case. See *Barker*, 407 U. S. at 531 (IV).

That defendants have some anxiety and concern is common to criminal proceedings. See *Jackson v. State*, 272 Ga. 782 (534 SE2d 796) (2000). But the trial court's finding that Elizabeth's anxiety was the same as every other defendant awaiting trial is not supported by the evidence because, among other things, hers included losing custody of a small child and having the State threaten to take a different child away from her at the time of that child's birth.

Here, Elizabeth testified that the delay caused her significant anxiety about the well-being of her child who was removed from the home for three years, about whether the State was going to take her subsequent newborn child, about her strained family relations, and about having to live under a cloud of suspicion for so long. This factor weighs in favor of Elizabeth Teasley, and, to a slight degree, in favor of Jerry, who did not testify. We agree with the Teasleys that the State's negligence in prolonging the separation of the family based on unproven allegations weighs heavily against the State. Given the length of delay in this case, the State's unexplained lack of persistence to prosecute a relatively straightforward case, the presumption of innocence, and the effect on Elizabeth Teasley, we conclude that the prejudice to Elizabeth was legally significant.

Without testimony from Jerry, we cannot say that he suffered in the same way as Elizabeth. We therefore conclude that the prejudice to Jerry was not as significant. This factor therefore weighs against the State with regard to Elizabeth but not significantly for Jerry.

(e) Finally, the trial court also relied on two other reasons for finding no violation of the Teasleys' right to a speedy trial. First, the court stated that, given that the victim was a small child, it had a duty to balance the victim's rights against the rights of the defendants. But we find no authority for weighing the specific victim's rights against the defendant's based on the circumstances of the case in order to conclude that a lengthy delay in prosecution attributable to the State is acceptable if the victim is a small child. Thus, we find the trial court erred by applying this factor.

The court also relied on the fact that, at the hearing on the motion to discharge, the State had offered to try the case the following week. But there is nothing in the record to show that the offer was serious, that it was communicated to the Teasleys prior to the motion hearing, or that the trial had in fact been calendered or scheduled.

In summary, the trial court made several legal errors when addressing the motion for discharge and acquittal. Although we review the trial court's decision for abuse of discretion, the deference we owe to the trial court is diminished when that court's decision is based on clearly erroneous factual findings or errors of law. *Williams v. State*, 277 Ga. 598, 601 (1) (e) (592 SE2d 848) (2004); *Hayes*, 298 Ga. App. at 338. Applying the *Barker v. Wingo* test, we conclude that the length of the delay and the blame for the delay weigh heavily against the State. The defendants' failure to doggedly pursue a speedy trial weighs against Elizabeth and heavily against Jerry. And the prejudice to the defendants weighs against the State with regard to Elizabeth but not with regard to Jerry. Combined with the errors noted above, we therefore conclude the trial court abused its discretion by denying Elizabeth Teasley's motion for discharge and acquittal but not by denying Jerry Teasley's motion. See, e.g., *Hayes*, 298 Ga. App. at 350.

" '[T]he only possible remedy' " for a violation of the constitutional right to a speedy trial is dismissal of the indictment with prejudice. *Strunk*, 412 U. S. at 440. Accordingly, this case is remanded with direction to enter a discharge and acquittal in favor of Elizabeth Teasley. See, e.g., *Hayes*, 298 Ga. App. at 350. Jerry Teasley's conviction is affirmed.

*Judgment affirmed in part, reversed in part, and remanded with direction. Smith, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 30, 2010.

*Patricia A. Provost*, for appellants.
*Robert W. Lavender, District Attorney*, for appellee.