**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 18, 2015**

# In the Court of Appeals of Georgia

A15A1626. THE STATE v. THOMPSON.

BRANCH, Judge.

Lauren Lynn Thompson brought a plea in bar concerning DUI and other charges against her on the ground that she had been deprived of her constitutional right to a speedy trial. On appeal from the trial court's grant of that plea, the State argues that the grant was error because Thompson herself was substantially responsible for any delay in getting to trial and could not have suffered any prejudice as a result of the destruction of the blood sample taken at the scene. We agree with the second of these contentions, and also find that the trial court did not make sufficiently explicit findings of fact on the timeliness of Thompson's assertion of her speedy trial right. We therefore vacate the trial court's judgment and remand for reconsideration.

We examine Thompson's constitutional speedy-trial claim under the four-part test established in *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972), "considering (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. See *Brown v. State*, 264 Ga. 803, 804 (2) (450 SE2d 821) (1994)." *Johnson v. State*, 268 Ga. 416, 417 (2) (490 SE2d 91) (1997). "The factors should be considered together in a balancing test of the conduct of the prosecution and the defendant." *Nusser v. State*, 275 Ga. App. 896, 897 (622 SE2d 105) (2005) (citations and punctuation omitted). "Absent an abuse of discretion, we must affirm the trial court's balancing and weighing of the four *Barker* factors." Id. However, when a trial court "'has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished.'" *State v. Porter*, 288 Ga. 524, 526 (2) (a) (705 SE2d 636) (2011), quoting *Williams v. State*, 277 Ga. 598, 601 (1) (e) (592 SE2d 848) (2004).

Viewed in favor of the trial court's judgment, the record shows that on the early morning of December 12, 2012, Thompson was driving her car when she crossed over into the opposite lane, struck an embankment, and flipped over. The trooper responding to the scene accompanied Thompson to the hospital, where the trooper

noted that Thompson had slow speech, constricted eye pupils, red and watery eyes, and smelled of alcohol. Thompson said that she did not remember what had happened, that she thought she had fallen asleep, and that she had been drinking bourbon and Coke while on prescribed doses of methadone. At the hospital, the trooper placed Thompson under arrest for DUI and read her the Georgia implied consent notice, including the portion of that notice informing Thompson that she was entitled to an independent test of her blood alcohol level.[1] It is undisputed that Thompson agreed to give a blood sample and declined an independent test. Thompson's appearance bond, issued on December 13, noted that she was facing charges including driving under the influence of drugs.

On February 2, 2013, Thompson appeared pro se in Franklin County Probate Court, demanded a jury trial, and moved that the case be transferred to Franklin County Superior Court. The probate court granted Thompson's motion. On May 6,

---

[1] See OCGA § 40-5-67.1 (b) (2), the implied consent notice for suspects age 21 and over, which reads in relevant part: "After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing."

2013, counsel appeared in the superior court and moved to transfer the case back to the probate court.[2]

On August 21, 2013, Thompson was formally charged with the misdemeanors of driving under the influence of benzoylecgonine (a cocaine metabolite), methadone, and alcohol; driving with a suspended license; and failure to maintain lane. On September 26, Thompson filed a general demurrer to the accusation and an omnibus motion to suppress a wide range of evidence, some of which was not at issue in the case.

On October 2, 2013, Thompson wrote to the Georgia Bureau of Investigation that she had been told at the scene that she could obtain independent testing and asked that she now be allowed to do so on the basis of the blood sample already taken. Two weeks later, on October 16, the GBI wrote back that it had received the sample on September 13, 2013; that it would retain the sample for one year; that it was "the responsibility of any interested party to make the appropriate arrangements to re-test these specimens within that one-year period"; that it was Thompson's responsibility to "contact an independent laboratory and arrange for them to pick up the specimen(s) either by lab courier or pre-paid parcel"; and that the GBI would

_____

[2] The trial court did not rule on this motion before disposing of the plea in bar.

4

"need a copy of [a] court order or [a] written authorization from the prosecuting agency" before it could release the sample for testing. On November 7, Thompson responded to the GBI, purportedly withdrawing her consent to having given the sample because she had never been told that she "had to go to court and get an order" to obtain an independent test. Thompson also noted that she "did not want anything to be destroyed" and sent a copy of her response to the trooper along with a note that "[y]ou told me I could have an independent test."

Trial was scheduled for March 31, 2014. On March 12, the State amended the accusation to exclude the allegation that Thompson was under the influence of the cocaine metabolite. On March 31, the State announced that it was ready, but Thompson asked for a continuance, which the trial court granted. The case came up for a second calendar call on July 10. The State again announced that it was ready. Thompson also announced ready, but asked that the court rule on her original motion to suppress and her request for an independent blood test, both of which were heard the following day. After testimony from the trooper and the hospital phlebotomist, including that Thompson's blood sample had revealed a blood alcohol concentration

5

of .03 grams, or .05 grams below legal intoxication per se,[3] the trial court ruled that "any samples of [Thompson's] blood still in existence be preserved by the Department of Forensic Sciences" and that the Department "shall facilitate independent testing of [the] blood." It is undisputed, however, that the blood sample had already been destroyed at the time the trial court issued its order. The trial court did not rule on Thompson's motion to suppress.

Seven months later, on February 25, 2015, Thompson filed a demurrer and plea in bar in which she asserted for the first time that her constitutional right to a speedy trial had been violated. After a hearing on March 2, 2015, the trial court granted the motion on the grounds that (1) the length of the delay was presumptively prejudicial and weighed heavily against the State; (2) the fact that much of the delay was unexplained weighed against the State; (3) Thompson had not waived her speedy trial right by failing to assert it; and (4) Thompson had suffered "irreparable harm" as a result of the State's delay in accusing her of driving under the combined influence of

---

[3] See OCGA § 40-6-391 (a) (a person "shall not drive or be in actual physical control of any moving vehicle while . . . (5) [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended[.]"

6

drugs and alcohol, during which the blood sample was destroyed. This appeal by the State followed.

1. *Presumption of Prejudice*. Thompson's trial was delayed two years and two months from the date of her arrest to the disposition of her plea in bar. "[O]ne year" from arrest to disposition of a plea in bar "generally marks the point at which delay becomes presumptively prejudicial." *Porter*, 288 Ga. at 526-527 (2) (b) (citations and punctuation omitted). "[O]nce the threshold of presumptive prejudice is satisfied, a presumption of prejudice always exists, although it increases in weight over time." Id. at 531 (2) (c) (4) (citation omitted). Given the length of this delay, the trial court was authorized to presume prejudice to Thompson's right to a speedy trial such that it was required to analyze the remaining three *Barker* factors, "with the length of the delay also factored into [its] consideration of prejudice." *Bass v. State*, 275 Ga. App. 259, 260 (1) (620 SE2d 184) (2005), citing *State v. Johnson*, 274 Ga. 511, 512 (1) (555 SE2d 710) (2001).

2. *Responsibility for the Delay*. In considering the parties' respective responsibilities for the twenty-six month delay between arrest and disposition of the plea in bar, the trial court noted the three months from arrest to initial appearance, the six months between jury trial demand and formal accusation, and the nine months

7

between Thompson's first request for an independent blood test and the issuance of the trial court's order authorizing the test. Without noting whether Thompson herself caused any part of the delay, and thus without engaging in any weighing process, the the trial court concluded that responsibility for the delay weighed against the State.

Thompson also caused some substantial delay, however, by filing a jury trial demand and then moving to transfer the case back to superior court and failing to obtain a ruling on that motion; by obtaining a continuance between February and July 2014; by filing two motions, including her request for an independent blood test, in July 2014 (the second occasion on which the State announced ready for trial); by failing to obtain a ruling on her motion to suppress; and by waiting some indeterminate period between the time she learned that the blood sample had been destroyed and the filing of her plea in bar. As we conclude in Division 4 below, Thompson's motion for an independent blood test lacked merit. We also note that delay resulting from "negligence and workloads" is "weighed only lightly, or benignly, against the State." *Porter*, 288 Ga. at 527 (2) (c) (2), citing *Sweatman v. State*, 287 Ga. 872, 875 (4) (700 SE2d 579) (2010). In light of our determination below that the trial court erred in failing to weigh Thompson's delay in asserting her speedy trial right and in concluding that she suffered prejudice as a result of the

8

destruction of the blood sample, we direct the trial court to recalculate whether this factor should continue to weigh against the State. See *Porter*, 288 Ga. at 534 (2) (e) (noting trial court's miscalculation of responsibility for delay, and ordering that the trial court reconsider this and other *Barker* factors).

3. *Assertion of the Speedy Trial Right.* The trial court correctly noted that the speedy trial right is not absolutely waived for a failure to assert it. See *Teasley v. State*, 307 Ga. App. 153, 160 (2) (c) (704 SE2d 248) (2010). As we noted in that same case, however, the fact that the right cannot be waived outright "does not mean . . . that the defendant has no responsibility to assert his right," but rather that "the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." Id. (citations, punctuation and footnote omitted).

The trial court noted that "[t]he [a]ccused did not initially assert a speedy trial [demand]." There is no indication in the trial court's order that it considered the delay in Thompson's assertion of her speedy trial right in the balancing process mandated by *Barker*. Our Supreme Court has held it "imperative" that "in cases implicating a defendant's constitutional right to speedy trial, the trial court enter findings of fact and conclusions of law consistent with *Barker*." *Porter*, 288 Ga. at 533 (2) (e)

9

(citations and punctuation omitted). In the absence of any findings by this trial court as to the weight to be given to Thompson's delay in asserting her speedy trial right, "there is no exercise of discretion for this Court to review" such that this order must be "vacated and the case remanded for the entry of a proper order pursuant to *Barker*." Id. (citation and punctuation omitted); see also *Higgenbottom*, 288 Ga. 429, 431 (704 SE2d 786) (2011).[4]

4. *Prejudice*. "The prejudice created by the delay is the fourth and final factor in our analysis, in which we consider three interests: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting

---

[4] For purposes of remand, we note that when considered in light of her July 2014 request for a ruling on her meritless motion for an independent blood test, Thompson's statement of readiness in July 2014 "cannot be construed as an assertion of the right to a speedy trial." *Brannen v. State*, 274 Ga. 454, 456 (553 SE2d 813) (2001) (objecting to continuance, stating readiness for trial, and suggesting witnesses should be held in contempt for failing to appear did not amount to an assertion of the speedy trial right) (citations omitted). The fact that Thompson failed to invoke her speedy trial right until well after the case was first called for trial, at which time she moved for a continuance, may also weigh "heavily" against her. See *Porter*, 288 Ga. at 528-529 (2) (c) (3) (noting that defendant did not assert his speedy trial right until after two trial dates had been set and continued at his counsel's request, and that "an extended delay in asserting the right to a speedy trial should normally be weighed *heavily* against the defendant") (emphasis in original); *Brown v. State*, 287 Ga. 892, 895 (1) (c) (700 SE2d 407) (2010) (holding that a defendant's failure to assert the speedy-trial right weighed heavily against co-defendants who waited two and three years, respectively, to assert that right).

the possibility that the defense will be impaired." *Bass*, 275 Ga. App. at 261 (4) (citation and punctuation omitted); see also *Hughes v. State*, 228 Ga. 593, 596 (1) (d) (187 SE2d 135) (1972) ("To sustain [a defendant's] contention that there was a violation of his constitutional right to a speedy trial, not only must delay be shown, but that such delay was purposeful, oppressive, or prejudicial") (citations and punctuation omitted).

(i) It is undisputed that the delay here was neither purposeful nor oppressive, and there is no evidence of bad faith on the State's part. See *Bass*, 275 Ga. App. at 261-262 (4) (no bad faith found in destruction of a DUI blood sample).

(ii) "Anxiety and concern of the accused are always present to some extent, and thus absent some unusual showing are not likely to be determinative in [a] defendant's favor." *Mullinax v. State*, 273 Ga. 756, 759 (2) (545 SE2d 891) (2001) (citation and punctuation omitted). Thompson was incarcerated for only one day before posting bond, with the result that this factor cannot weigh in Thompson's favor. See *Bass*, 275 Ga. App. at 261-262 (4) (no pretrial imprisonment meant that this factor could not weigh in a defendant's favor).

(iii) The specific manner in which Thompson's defense was impaired is "the most important component of the prejudice analysis." *Bass*, 275 Ga. App. at 261 (4),

11

citing *Mullinax*, 273 Ga. at 759 (2). The trial court concluded that Thompson was prejudiced by the State's delay in charging her with driving under the influence of both alcohol and drugs and by the destruction of the blood sample she first requested in October 2013. We cannot agree.

Thompson was on notice that the State was considering charges that she was under the influence of both drugs and alcohol as early as December 2013. More importantly, Thompson has cited no authority supporting her proposition that her right to an independent chemical test of her blood survived her waiver of that right at the scene. OCGA § 40-6-392 (a) provides:

> Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person in violation of Code Section 40-6-391 [concerning DUI], *evidence of the amount of alcohol or drug in a person's blood*, urine, breath, or other bodily substance at the alleged time, *as determined by a chemical analysis* of the person's blood, urine, breath, or other bodily substance *shall be admissible. . . .*
>
> (3) *The person tested may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer*. The justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer[.]

12

(4) *Upon the request of the person who shall submit to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests shall be made available to him or his attorney*. The arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section.

(Emphasis supplied.)

This Court has thus held that although an officer administering a chemical test under OCGA § 40-6-392 (a) (4) must "*advise* the testee that he is entitled to an independent test of his own choosing[,] [o]nce that duty is fulfilled by the officer, the statutory obligation is satisfied." *State v. Griffin*, 204 Ga. App. 459, 461 (2) (419 SE2d 528) (1992) (citation and punctuation omitted; emphasis in original). As our Supreme Court has held, moreover, a defendant's right to ask for an independent test *at the time of arrest* under OCGA § 40-6-392 (a) (3) "is not one of constitutional dimension but a 'matter of grace' bestowed by the Georgia legislature." *Padidham v. State*, 291 Ga. 99, 101 (2) (728 SE2d 175) (2012), quoting *South Dakota v. Neville*, 459 U. S. 553, 565 (III) (103 SCt 916, 74 LE2d 748) (1983); see also *Rodriguez v. State*, 275 Ga. 283, 287-288 (3) (565 SE2d 458) (2002). As the *Padidham* Court went on to explain:

[T]he choice to submit or refuse to submit to the analysis of one's blood, breath, urine or other bodily substance will not be an easy or pleasant one to make, but the criminal process often requires suspects and defendants to make difficult choices. DUI defendants . . . must determine, often under difficult and stressful circumstances, whether to request an independent test. That the choice may be difficult does not render it fundamentally unfair[.]

291 Ga. at 102-103 (2) (citations and punctuation omitted).

Here, Thompson admitted below that OCGA § 40-6-392 (a) (3), which specifically concerns independent tests, did not apply, presumably because her request came months after she waived any right she had to such a test. Thompson also asserted below that OCGA § 40-6-392 (a) (4) granted her the right to an independent test of her blood sample, but she has abandoned this argument on appeal, perhaps because that portion of the statute concerns only a state-administered test. See, e.g. *Birdsall v. State*, 254 Ga. App. 555, 558 (562 SE2d 841) (2002) (OCGA § 40-6-392 (a) (4) "specifies no deadline for requesting 'full information,' no timetable for supplying the information, and no penalty for the state's failure to produce it"). Further, and although OCGA § 40-6-392 (a) (3) authorized Thompson to obtain an independent test of her blood sample, neither that nor any other statute granted her that right in perpetuity. On the contrary, "the facts show that [Thompson] was

14

*afforded the opportunity* to obtain an independent test of [her] blood, and that is *all* that is required" by the statute. *Griffin*, 204 Ga. App. at 461 (2) (emphasis in original).

Thompson was also charged only with misdemeanors, as to which OCGA § 17-16-23 (b)[5] provides: "In all criminal trials the defendant shall be entitled to have a complete copy of any written scientific reports in the possession of the prosecution which will be introduced in whole or in part against the defendant by the prosecution in its case-in-chief or in rebuttal." Subsection (a) of the same statute includes "blood alcohol *test results* done by a law enforcement agency" in the category of discoverable "written scientific reports" (emphasis supplied); it does *not* include the biological samples on which such test results are based. See *State v. Tan*, 305 Ga. App. 55, 58 (699 SE2d 74) (2010) (trial court erred in granting defendant's motion to suppress a breath test slip from an Intoxilyzer because the slip did not show any result and therefore did not constitute a "written scientific report" under OCGA § 17-16-23 (b)); *Birdsall*, 254 Ga. App. at 558 (printout from gas chromatograph was not a scientific report for purposes of OCGA § 17-16-23 (b)). Indeed, OCGA § 17-5-56

---

[5] Compare OCGA § 17-16-4 (applicable only to felony offenses; see OCGA § 17-16-2 (a)).

15

(a) provides that with exceptions not applicable here, "*[b]iological samples* collected directly from any person for use as reference materials for testing or *collected for the purpose of drug or alcohol testing shall not be preserved*." (Emphasis supplied.)

Finally, Thompson has failed to show that she was prejudiced as to any constitutional right by the destruction of the blood sample because she did not show that "'the evidence [possessed] an exculpatory value that was apparent before it was destroyed[.]'" *Clay v. State*, 290 Ga. 822, 841 (5) (c) (725 SE2d 260) (2012), quoting *Walker v. State*, 264 Ga. 676, 680 (3) (449 SE2d 845) (1994). Specifically, and in light of both Thompson's admission to have drunk bourbon in combination with her prescribed doses of methadone and the State blood test results confirming a blood alcohol level of .03, Thompson's assertion that the destroyed blood sample would have exonerated her is mere speculation. This fourth *Barker* factor must therefore weigh in the State's favor as a matter of law. See *Glover v. State*, 291 Ga. 152, 155 (3) (728 SE2d 221) (2012) (despite a ten-year delay in being brought to trial, a defendant had provided "no evidence of prejudice arising from the delay") (citation and punctuation).

5. *Balancing factors*. When, as here, a trial court "'has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed

16

the trial court's ultimate ruling is diminished.'" *Porter*, 288 Ga. at 533 (2) (e), quoting *Williams*, 277 Ga. at 601.

As we have explained, the third and fourth *Barker* factors must weigh heavily against Thompson on remand. Nonetheless, we remain mindful of our Supreme Court's admonition that "[i]f all four factors point in one direction, the result of weighing them together will be clear, but otherwise, under the circumstances of a particular case, any one factor may be weighty enough to tip the balance." *Porter*, 288 Ga. at 532 (2) (d); see also *Barker*, 407 U. S. at 533 (IV) ("We regard none of the four factors . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant."). Here, we cannot say that the delay in bringing the case to trial was entirely attributable to Thompson as a matter of law. Because the trial court must recalculate whether this second *Barker* factor weighs in her favor, we vacate the trial court's judgment and remand for a discretionary reconsideration, factual findings, and rebalancing of all four *Barker* factors consistent with this opinion. See *Porter*, 288 Ga. at 534.

*Judgment vacated and case remanded with direction. Andrews, P. J., and Miller, J., concur.*

17